MARJORIE MAVER, PETITIONER-APPELLANT, v. DWELL-
ING MANAGERS CO., AND FIDELITY & CASUALTY CO.
OF NEW YORK, RESPONDENTS-RESPONDENTS.

Argued February 21, 1961—Decided April 10, 1961.

*Mr. Seymour B. Jacobs* argued the cause for petitioner-appellant (*Mr. Jacob L. Balk,* attorney; *Mr. Seymour B. Jacobs,* of counsel and on the brief).

*Mr. Isidor Kalisch* argued the cause for respondents-respondents.

The opinion of the court was delivered by

WEINTRAUB, C. J. The principal issue is the amount of workmen's compensation payable to the widow of the deceased employee. The widow and the decedent were jointly employed as superintendents of an apartment house, receiving $130 per month, an apartment valued at $80 per month, and gas, electric, and telephone service worth the further sum of $10 per month. The decedent was also regularly employed elsewhere as a boilermaker, at which employment he earned $4.46 per hour, working a 35-hour week. The

deputy director aggregated the earnings of the husband in both employments and awarded the maximum rate of $40 per week. The County Court considered solely the husband's *pro rata* share of the remuneration received from the respondent-employer and awarded the minimum rate of $10. The Appellate Division affirmed the County Court, 63 *N. J. Super.* 304 (*App. Div.* 1960), and we granted certification, 34 *N. J.* 64 (1961).

The Appellate Division held decedent's employment as superintendent was full-time and reached its ultimate conclusion upon that premise. We are unable to accept the premise. The couple were initially engaged by the former owner of the apartment house, and the evidence is uncontradicted that the employment of decedent as superintendent was then understood to be part-time only. Respondent continued the employment of the couple, and its representative acknowledged he knew decedent had another regular job. After the fatal accident, the witness offered to continue the basic arrangement if the son, age 34, would assume the role theretofore performed by his father, to which the parties agreed, and again respondent understood the son would, as in the case of the father, continue full-time work elsewhere. Hence we think it clear the employment here was part-time.

I.

The statute nowhere provides for compensation benefits limited or geared to part-time earnings. On the contrary the central theme of *R. S.* 34:15–37, as amended, is that the earnings paid shall be translated into a "weekly wage." *Mahoney v. Nitroform Co.,* 20 *N. J.* 499, 509 (1956). It provides that where the rate is fixed by the output of the employee, "the daily wage" shall be calculated by dividing the total earnings for the preceding six months by "the number of days the workman was actually employed"; and that where the rate is fixed by the hour, "the daily wage" shall be computed "by multiplying the hourly rate by the

*customary* number of working hours *constituting an ordinary day in the character of the work involved."* The statute then requires "the daily wage" to be multiplied "[i]n any case \* \* \* by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half or seven, according to the *customary* number of working days constituting *an ordinary week in the character of the work involved,"* adding that "Five days shall constitute a minimum week." (Emphasis added) The compensation benefits are then determined under *N. J. S. A.* 34:15–12 and 13 upon the basis of the weekly wage. Hence there is no warrant for accepting as the "weekly wage" such sum as may have been paid *during* a week when the period of actual work was less than in the customary work-week for work of the character involved.

The reason for the statutory plan is clear. The workmen's compensation act substituted a finite schedule of liability for the vagaries of a common law action. The employer is liable without fault, but even if at fault, he may pay much less than a damage award at law. The object of the statute is to compensate for the inroad upon the full-time earning capacity of the victim of industrial mishap upon an adjusted schedule of benefits, and of course a part-time job may be the setting of the destruction of an earning unit capable of full-time work, as in the case before us. At a glance, it may seem harsh to impose the liability of a full-time employer upon a part-time employer and its carrier. This is but superficially so, since the employer pays premiums only upon his actual payroll figure; and as to the carrier which receives premiums on that limited basis the compensating factor is that the chance of injury is reduced by the brevity of the actual period of work. If a man is employed for 5 hours rather than 40, the likelihood of injury is but one-eighth of what it would be in a full week of work.

Hence the legislative decision was to deal with a constructed weekly wage rather than the actual wage paid during

a week for part-time work, and this is the view of the statute settled by *Engelbretson v. American Stores,* 49 *N. J. Super.* 19 (*App. Div.* 1957), affirmed on opinion below, 26 *N. J.* 106 (1958), and *Knight v. Cohen,* 32 *N. J.* 497 (1960).

## II.

We come next to the problem of multiple employments, and specifically to the question whether the pay from all employments should be aggregated or whether the weekly rate should be found on the basis of the rate of pay for the work in which the accident occurred.

██ A distinction may be drawn at once between employments which are *joint* and employments which are concurrent but independent. Where an employee's full time is jointly engaged by a number of employers, the total remuneration received from all satisfies the statutory objective. *Cser v. Silverman,* 46 *N. J. Super.* 599 (*Cty. Ct.* 1957), affirmed, 50 *N. J. Super.* 125 (*App. Div.* 1958); see *Scott v. Public Service Interstate Transp. Co.,* 6 *N. J. Super.* 226 (*App. Div.* 1950). But employments which are independent present a different situation.

Some jurisdictions distinguish between separate employments which are similar and separate employments which are dissimilar, aggregation of pay being permitted in the former but not in the latter. 2 *Larson, Workmen's Compensation* § 60.31, *p.* 78 (1952). Where the employments are similar, aggregation would yield the same result which would be reached if our statutory method described above were applied to the pay rate of the employment of injury alone, at least if the total hours of work did not exceed the ordinary work-week and the rates of pay were not significantly diverse. The difficult situation is the one before us, where the pay rates are distinctly different, and where, in addition, the aggregated pay would exceed the remuneration for the ordinary full-week in each occupation.

■ Where the separate employments are dissimilar, the carrier or employee may profit at the expense of the other if the remunerations are aggregated. For example, if the employee is injured in the employment of higher rate of pay, it is to his advantage to seek a weekly wage based on the higher unit rate, whereas the carrier would gain if the weekly wage were diluted by the earnings in the other employment. On the other hand, if the injury is suffered in the employment with the lower rate of pay, the employee would gain if he could include the higher earnings of the other job. In either situation, the carrier of the full-time employer experiences a disadvantage if the part-time pay of another employment is added. The inequity from an insurer's view would be diminished in a jurisdiction in which insurance coverage is provided solely by a state fund, since the fund receives premiums upon all of the payrolls. But in our State, in which the carriers are numerous, with each collecting premiums on the basis of the hazard of individual risks of its own insureds, *N. J. S. A.* 34:15–89, the carrier of the full-time employer or the carrier on the employment with the lower pay rate must lose when it is charged also with the part-time payroll or with the payroll of another employment of higher pay rate. Overall the experience of carriers in our State might substantially average out, but this is less likely in the case of self-insurers, and of course the individual employee who fares poorly is not at all interested in averages.

At any rate, the question is whether our Legislature embraced the aggregation approach. We think not, both on the basis of the history of the act and on the basis of the formula the Legislature adopted.

The Joint Resolution (*No. 2, L.* 1910, *p.* 608), creating the commission which recommended our statute, specifically in its recitals invited the commission to examine the English statute among others. The English act of 1906 provided that in the case of concurrent employments, the employee injured in one employment shall be compensated as if the

earnings from all the contracts were received in the employment of injury. See Annotation, 30 *A. L. R.* 1000, 1002, 1003 (1924); *Walters v. Greenland Drilling Co.,* 184 *Kan.* 157, 334 *P. 2d* 394, 395 (*Sup. Ct.* 1959). The statute which the commission recommended and which was adopted in 1911 did not include that provision, and although our act may be said to have been quite unrevealing in its original form, yet it is significant that the amendments of 1913 (*c.* 174, *p.* 313) and 1919 (*c.* 93, *p.* 213), did not follow the English example. Rather our statute, as then and still later amended, concentrates upon the rate of pay received from the respondent-employer; and its reference to the "character of the work involved" in the determination of the "ordinary day" and the "ordinary week" seems to us to single out the employment of injury and to exclude dissimilar work. And in the light of the mandate for the use of the wage for the ordinary week, there can be no basis for adding to the wages of a full-time employment the additional wages of a part-time employment with another employer. Hence we are satisfied our statute singles out the employment of injury and requires a finding of the weekly wage with reference to it alone. This conclusion accords with the direction we gave in *Knight v. Cohen, supra* (32 *N. J.* 497).

### III.

▉ Hence we approach the resolution of this case without reference to decedent's job as a boilermaker. The first inquiry relates to the rate of pay at which he was compensated by respondent. Decedent and his wife were jointly engaged, but the work of each was essentially distinct and different. The apartment house is a 6-story structure with 42 dwelling units. The wife took care of the books, the telephone and the first floor hall and vestibule. Decedent did the heavy work, skilled and unskilled. It included carpentry, electrical, plumbing work, the care of the boiler, which, the record reveals, malfunctioned considerably, snow removal,

care of the grounds, garbage disposal, mopping of the halls, periodic handling of some 300 screens, etc. He worked an average of two hours a day. There is no estimate of the hours of her work, but in terms of actual activity it was less and surely was of a character which would command a smaller rate of compensation than would the work of the husband.

Although decedent and his wife were jointly retained for a single sum, it would be unreasonable to assume the services of both were agreed to be of equal value. They accepted a joint rate simply because it made no difference to a husband-wife team. Surely if a man and woman, not so related, were separately hired to do respectively what the husband and wife here did, the remuneration would not have been the same for both. The relative work load and the skills involved clearly require an allocation of a larger portion of the pay to the man. The parties not having fixed the division, we must do the best we can. We find a reasonable division of the total compensation would be 2/3 for the husband and 1/3 for the wife. The total annual compensation for both was $2,640, of which $1,760 is accordingly allocable to the husband. He worked a total of 728 hours during the year, which leads to an hourly rate of $2.40.

The remaining inquiry concerns the customary full-time day and week for work of the character he performed. He being a resident-employee and the occasions for his services being in good part irregular, we cannot determine a customary full-time day by reference to the facts of this particular job. Nor would it be realistic to say that the number of days on which a part-time, resident-superintendent did some work (here seven) is the correct measure of the number of days to be used in the computation. Rather, in these circumstances reference should be made to the customary work day and work week of men employed full-time in work of the same character, as for example, maintenance men employed on a non-resident basis at large apartment opera-

448

tions or hotels or industrial plants. If the customary day and week cannot thus be fairly found, the week should be considered to consist of 40 hours. We remand the matter to the Division to permit the parties to offer proof upon this phase.

### IV.

The result we have reached makes it unnecessary to consider the issue of counsel fees raised by petitioner.

The judgment is reversed and the matter remanded to the Division of Workmen's Compensation for further proceedings not inconsistent herewith.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.