Lorraine H. HOWELL, Appellant,

v.

SUPERMARKETS GENERAL CORPO-
RATION, Appellee.

Supreme Court of Delaware.

Argued Feb. 14, 1975.

Decided May 7, 1975.

Oliver V. Suddard, Wilmington, for appellant.

Howard M. Berg, of Berg, Komissaroff & Sawyer, Wilmington, for appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this workmen's compensation case, the Industrial Accident Board denied the employer's petition to terminate the employee's total disability compensation. The employer appealed to the Superior Court which remanded the case to the Board. The employee appeals that decision.[1]

---

1. Although this is an appeal from an interlocutory order, we take jurisdiction because a substantial issue and a legal right were determined below. *Pepsico, Inc. v. Pepsi-Cola Bottling Company of Asbury Park*, Del. Supr., 261 A.2d 520 (1969).

## I.

In denying the employer's petition to terminate the employee's total disability compensation, the Board stated:

"This being the carrier's petition to terminate, the burden is placed upon the carrier to show by a preponderance of competent evidence that regular employment within the claimant's capabilities is available to the claimant. This is so because total disability, once established, is deemed to continue until such a showing has been made. *Ham v. Chrysler Corporation*, Del.Supr., 231 A.2d 258 (1967); *M. A. Hartnett v. Coleman*, Del.Supr., 226 A.2d 910 (1967); *Bigelow v. Sears, Roebuck & Company*, Del.Supr., 260 A. 2d 906 (1969); *Huda v. Continental Can Company, Inc.*, Del.Supr., 265 A.2d 34 (1970).; * * *."

The basis of the Board's ruling has been referred to as the burden-of-proof rule of the *Ham* case. The Board was erroneous in its implication that in every termination of total disability proceeding the employer must show the availability of regular employment within the employee's capabilities.

■ The decision of the Board pre-dated three important decisions of this Court of the subject: *Avon Products, Inc. v. Lamparski*, Del.Supr., 293 A.2d 559 (1972); *Franklin Fabricators v. Irwin*, Del.Supr., 306 A.2d 734 (1973); and *Chrysler Corporation v. Duff*, Del.Supr., 314 A.2d 915 (1974). In *Franklin*, "for the sake of clarity", this Court pointed out that the burden-of-proof rule of the *Ham* case, which places the burden upon the employer to show the availability of employment, "is intended to apply only in 'displaced' worker cases. It is not intended to apply in every case in which the employer seeks to terminate total disability compensation * * *."

In the instant case, the Board was obviously led into error in the application of the *Ham* rule by confusion in the cases which this Court ultimately sought to dis-

pel in *Franklin* by the following explanation of the *Ham* rule: (306 A.2d at 737)

" * *· *. If the evidence of degree of obvious physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age, places the employee *prima facie* in the 'odd-lot' category, as defined in *Hartnett* and *Ham*, the burden is on the employer, seeking to terminate total disability compensation, to show the availability to the employee of regular employment within the employee's capabilities. This was the situation in *Ham* and in Bigelow v. Sears, Roebuck & Company, Del.Supr., 260 A.2d 906 (1969). If, on the other hand, the evidence of degree of physical impairment, coupled with the other specified factors, does not obviously place the employee *prima facie* in the 'odd-lot' category, the primary burden is upon the employee to show that he has made reasonable efforts to secure suitable employment which have been unsuccessful because of the injury; upon such *prima facie* showing of 'odd-lot' classification, the *Ham* burden of proof is imposed upon the employer, seeking to terminate total disability compensation, to show availability to the worker, thus 'displaced', of regular employment within his capabilities. This was the situation in *Huda v. Continental Can Company, Inc.*, Del.Supr., 265 A.2d 34 (1970), and in the instant case. * * *."

In a further attempt to clarify and dispel continuing doubt as to the proper application of the *Ham* and *Franklin* rules, this Court set out the following procedural guidelines in the *Duff* case: (314 A.2d at 918, n. 1)

"We note that the *Franklin Fabricators* standards may be more difficult in practice than in mere statement. We do not desire from our limited position of appellate review to dictate the details of practice before the Board. Perhaps, however, it would be useful to state gen-

erally how we envisage the standards in operation: In the ordinary total disability termination case the employer should initially be required to show that the employee is not completely incapacitated for work and, in demonstrating medical employability, will have, as a practical matter, the opportunity to show by the factors of physical impairment, mental capacity, training, age, etc., that the employee is not in the 'odd-lot' category. In response, the employee may present his evidence in support of total disability, his evidence that he is prima facie in the 'odd-lot' category and, if appropriate, his evidence of reasonable efforts to secure employment which have been unsuccessful because of the injury. In rebuttal, the employer may present evidence of the availability of regular employment within the employee's capabilities as well as any other rebuttal evidence. Surrebuttal may be permitted to show nonavailability of regular employment. Obviously, legal rulings, when applied for in a given case can affect this general procedural outline and these remarks should not be construed as a rule of law to be inflexibly applied. Equally obviously, the Board must make practical adjustments on the order of the presentation of evidence."

Both the *Franklin* and the *Duff* cases had been decided by this Court at the time the Superior Court remanded the instant case to the Board. The remand was on the ground that the Board had failed to make an "initial determination" as to whether the employee was "displaced", i. e., "odd-lot". This decision to remand was made upon the premise that under *Franklin:*

"[T]he trier of fact must initially determine whether the Employee is in actuality 'displaced' or 'odd-lot'. Only aftter making the initial determination is it possible to determine to which party the burden of proof has shifted.

"It is clear from a review of the results below that the Board failed to make the initial finding as to the Employee's proper category."

The Superior Court erred in its reading of *Franklin* as requiring an "initial" determination as to odd-lot classification upon the basis of which the burden of proof may "shift". This interpretation of Franklin incorrectly raises the inference of a bifurcated hearing. Indeed, on the basis thereof, counsel in this case suggest a procedure which would require a hearing first on the issue of category, followed by a ruling thereon, followed by a subsequent hearing on the issue of employability. *Franklin* does not call for any such bifurcation and fragmentation.

■ The basics of the procedures to be followed in the application of the *Ham* and *Franklin* rules are set forth in *Duff*. The parties must come to trial, as in other cases, prepared to put in all the evidence they have, as the case proceeds, to meet the burdens of proof imposed upon them under the law. The ultimate decision of the Board will reflect whether, in its judgment, the parties have been successful in carrying their respective burdens of proof.

Thus, as the employee has contended, the Superior Court's reason for remand was error; but the case must be remanded, nevertheless, in order to give the Board the opportunity of considering this case in the light of the *Franklin* decision. In both *Franklin* and *Duff*, there were remands for that purpose; we follow the same course here. In so doing, however, we direct that this case be given priority both in the Superior Court and the Industrial Accident Board. The Board's decision is dated May 16, 1973; the case is now on its way back to the Board almost two years later. As we have often stated, such delay in the processing of workmen's compensation cases is indefensible.

## II.

Upon the remand, the Superior Court directed the Board to recompute the employee's compensation if an award is made. The Board had computed compensation on a full-time basis for this part-time employee. The record shows that the employee, a part-time cashier, was paid $3.65 per hour and worked between 29 and 34 hours per week. Upon the basis of 19 *Del.C.* § 2302(b) and *Fitzgerald v. Roy's Flying "A"*, Del.Super., 266 A.2d 193 (1970), aff'd. Del.Supr. (Mem. No. 86, 1970), the Board computed compensation upon the basis of "the average work week of the employer" of 40 hours per week. The Superior Court ruled that the Board erred in computing compensation for this part-time employee upon a full-time basis, holding that compensation should have been based upon the alternative "exceptional causes" provision of § 2302(b).[2] In this, also, the Superior Court erred.

In the *Flying "A"* case, this Court approved the Superior Court's construction of the ambiguous language of § 2302(b). The Statute nowhere provides for compensation benefits limited or geared to part-time earnings. The policy of § 2302 is that earnings be translated into a "weekly wage". As was stated in *Maver v. Dwelling Managers Co.*, 34 N.J. 440, 170 A.2d 35, 36 (1961), which dealt with a similar statute, there is no basis in such statute "for accepting as the 'weekly wage' such sum as may have been paid during a week when the period of actual work was less than in the customary work-week for work of the character involved. * * *.

Hence the legislative decision was to deal with a constructed weekly wage rather than the actual wage paid during a week for part-time work." The employer and the Court below sought to distinguish *Flying "A"* on the ground that there the part-time employee also held a full-time job. That is not the determinative factor in the proper construction of the Statute. The controlling factor is the legislative intent to compensate the employee for his loss of earning capacity—not loss of wages earned. As stated by Chief Justice Weintraub in the *Maver* case: (170 A.2d at 36)

> " * * *. The object of the statute is to compensate for the inroad upon the full-time earning capacity of the victim of industrial mishap upon an adjusted schedule of benefits, and of course a part-time job may be the setting of the destruction of an earning unit capable of full-time work, as in the case before us. * * *."

Similarly, in the case before us, there is nothing in the record to show that this employee, who worked as much as 34 hours per week, was not an "earning unit capable of full-time work". Moreover, "exceptional circumstances" are not present in this case. Compare *Stanton Lighting Corporation v. Bernstein*, Del.Super., 316 A.2d 560 (1973).

The Board did not err in its basis for computation of compensation.

* * *

The cause is remanded to the Superior Court with instructions to remand to the Board for further proceedings in conformity herewith.

---

**2.** 19 *Del.C.* § 2302(b) provides:

"(b) If the rate of wages is fixed by the day or hour, his weekly wages shall be taken to be that rate times the number of days or hours in an average work week of his employer at the time of the injury. If the rate of wages is fixed by the output of the employee, then his weekly wage shall be taken to be his average weekly earnings for during so much of the preceding six months as he has worked for the same employer. If, because of exceptional causes, such method of computation does not ascertain fairly the earnings of an employee, then the weekly wage shall be based on the average earnings for six months of an average employee of the same or most similar employment."