154 N.J. Super. 188 (1977)
381 A.2d 65
VIRGINIA B. BUSH, PETITIONER-APPELLANT,
v.
JOHNS-MANVILLE PRODUCTS CORPORATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1977.
Decided November 30, 1977.
*190 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Robert N. Golden argued the cause for appellant (Messrs. Graham, Yurasko, Golden & Lintner, attorneys).
Mr. Richard H. Thiele, Jr. argued the cause for respondent (Messrs. Wharton, Stewart & Davis, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
This is a workers' compensation death case in which the sole issue is the amount of weekly dependency death benefits to be paid to the surviving widow.
Decedent Anthony Bush was employed by respondent Johns-Manville Products Corporation from November 1922 to February 1924. His wages were $17.75 a week. After leaving the employ of respondent, decedent worked for others, chiefly the Central Railroad of New Jersey for whom he worked for approximately 50 years. Decedent died December 15, 1975 from a malignant mesothelioma. It is undisputed that this cancer was causally related to decedent's exposure to asbestos during the 16 months that he worked for respondent and was the cause of death.
Petitioner Virginia B. Bush was awarded dependency death benefits at the minimum rate of $15 a week for 450 *191 weeks and thereafter during the continuance of her widowhood. This benefit rate was based on decedent's last wages in respondent's employ of $17.75 a week. Decedent earned $400 a week during his last full-time employment for the Central Railroad of New Jersey.
The judge of compensation, in reaching his conclusion, recognized the total inadequacy of the weekly benefits awarded petitioner and the change in the economy of the country over the last 50 years, but found he had no power to apply a compensation rate other than that computed on the wages paid in 1924. He held that any relief from that situation must come from the Legislature. As an index to the legislative intent, the judge observed that the Legislature had periodically raised the weekly compensation rate but decreed that such increases should be prospective only. He observed, further, that once an award is made it remains the same in spite of any future rate increases.
On this appeal petitioner recognizes that a literal reading of the Workers' Compensation Act supports the conclusion of the judge but urges this court to construe this socially important and ever broadening Compensation Act in a manner that will provide fair and adequate compensation benefits for her. Parkinson v. J & S Tool Co., 64 N.J. 159 (1974).
Petitioner argues that since decedent first became disabled in 1975, the equivalent of a 1975 wage should be used in computing her dependency benefits. Recognizing the lack of proof of an appropriate 1975 wage rate for the job performed by decedent in 1924, petitioner suggests a 1975 wage rate could be computed using any of the following alternatives:
(1) Take the wages earned by decedent wherever he was last fully employed on the date of the manifestation of the occupational disease. In this case that weekly wage was $400 and would thus afford maximum dependency benefits of $119 a week.
*192 (2) Assume decedent was in the employ of respondent at the time of death and ascertain the wages being paid at that time for the position filled by decedent in 1924.
(3) Look to the wages last earned by decedent in respondent's employ and compute the present value thereof, using accepted accounting and statistical methods to build in the inflation factor for the intervening years.
(4) Use the average wage base which the Commissioner of Labor and Industry fixes effective January 1 of each year as the basis for assigning the maximum temporary total disability, permanent total disability and dependency rates in the following years. N.J.S.A. 34:15-12(a).
(5) Use the legal minimum wage in effect on the date of the manifestation of the occupational disease or death.
We are fully aware that the approach to the Workers' Compensation Act should be upon both equitable and humanitarian principles. Parkinson v. J & S Tool Co., supra. However, we cannot, in the guise of a liberal interpretation, rewrite the compensation act. That is the sole province of the Legislature. If application of the statute produces inequity, unfairness and hardship, the remedy is in the hands of the Legislature. Miles v. Theobald Industries, 144 N.J. Super. 535, 537 (App. Div. 1976), certif. den. 73 N.J. 51 (1977); Silagy v. State, 105 N.J. Super. 507, 510 (App. Div.), certif. den. 54 N.J. 506 (1969).
Claims for injury or death as a result of occupational disease are governed by the same rules applicable to claims for injury or death by accident. N.J.S.A. 34:15-35. However, there is a different approach to the time period within which claims may validly be made in the two situations. Claims for injury arising out of accident must be filed within two years of the date of the accident. N.J.S.A. 34:15-51. On the other hand, as a result of a recent amendment to the occupational disease section of the Workers' Compensation Act, L. 1974, c. 65, § 1, a claim for disability or death caused by occupational disease may be filed "within two years after the date the claimant first had knowledge" of the nature of *193 his disability and its relation to his employment. N.J.S.A. 34:15-34. This amendment has retroactive application. Panzino v. Continental Can Co., 71 N.J. 298 (1976).
Thus, for the first time, the door has been opened for the filing of a petition for compensation benefits where disability and death resulting from an occupational disease are separated from exposure or employment by a time lapse, as here, of over 50 years. This time lapse possesses a potential for hardship which did not previously exist.
The wages which provide the basis upon which dependency benefits are computed are defined in N.J.S.A. 34:15-37 as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident * * *." This statutory provision was applicable at the time the 1974 amendment was adopted. If the Legislature intended to alter the basis for computing wages, it would have said so.
Petitioner recognizes that N.J.S.A. 34:15-32 requires that compensation benefits for occupational disease shall be the "same in amount and duration" and "shall be payable to the same persons as would be entitled thereto had the death or disability been caused by an accident arising out of and in the course of employment," and argues that the word "accident," as used therein, should be interpreted in occupational disease cases as occurring at the time the occupational disease first becomes manifest or the time when death caused by the occupational disease occurs.
We disagree. It is true that this is the test generally applied to determine when a cause of action accrues for statute of limitations purposes, Brooks v. Bethlehem Steel Co., 66 N.J. Super. 135 (App. Div.), certif. den. 36 N.J. 29 (1961); Biglioli v. Durotest Corp., 44 N.J. Super. 93 (App. Div. 1957), aff'd 26 N.J. 33 (1958); Natural Products Co. v. Hudson Common Pleas, 123 N.J.L. 522 (Sup. Ct.), aff'd 125 N.J.L. 309 (E. & A. 1940); cf. Calabria v. Liberty Mut. Ins. Co., 4 N.J. 64, 72 (1950).
*194 But, for the purpose of the consideration of the sole issue on this appeal, which is the computation of compensation benefits to which petitioner is entitled, we cannot ignore N.J.S.A. 34:15-37, to which N.J.S.A. 34:15-32, the occupational disease benefits provision, is keyed. N.J.S.A. 34:15-37 specifically refers to the wages or money rate at which the service rendered is recompensed under the "contract of hiring in force at the time of the accident." This can only mean the contract of hiring with the employer who is to pay the compensation benefits. Cf. Tomarchio v. Greenwich Tp., 75 N.J. 62, 79, 370 A.2d 848 (1977); cf. Maver v. Dwelling Managers Co., 34 N.J. 440, 444-46 (1961). Clearly, there was no such contract of hiring in force in 1975, at the time of decedent's death. In the context of the wage base to be used for occupational disease dependency benefits, "accident" thus cannot mean the date of death.
If Bush had sustained a serious injury with consequent total disability in 1924 as a result of an accident, he would have received an award of total permanent disability at the rate of $11.82 a week for the full period of total disability. See N.J.S.A. 34:15-12(b), as amended L. 1923, c. 49, § 1. Had he subsequently died in 1975, as a result of the accidental injury sustained in 1924, and a dependency claim then been filed, the wages for the purpose of determining the rate of dependency benefits would have been the wages earned by Bush at the time of his employment in 1924. N.J.S.A. 34:15-13; N.J.S.A. 34:15-37. Huyett v. Pennsylvania R.R. Co., 86 N.J.L. 683 (E. & A. 1914). The plain language of N.J.S.A. 34:15-32 requires that compensation for occupational disease be treated in exactly the same manner.
In death cases it is clear that the benefit rate to be applied in both occupational disease and accident cases is the rate in effect at the time of death, not the rate in effect at the time of exposure or accident. Calabria v. Liberty Mut. Ins. Co., supra; McAllister v. Kearny Bd. of Ed., 79 N.J. Super. 249, 257 (App. Div. 1963), aff'd 42 N.J. 56 (1964); cf. Koval v. Natural Products Refining Co., 25 N.J. Misc. *195 489, 491 (Sup. Ct. 1947). However, this "benefit rate" established in N.J.S.A. 34:15-13 is applied to wages as defined in N.J.S.A. 34:15-37. Unquestionably, application of the 1975 benefit rate to 1924 wages fails to take into account the ongoing inflation which has seriously depreciated the value of the dollar. However, the legislative scheme to date has been to use the wages in effect "under the contract of hiring" at the time of the accident as the basis for computation of compensation benefits, rather than some reconstructed wage based on subsequent employment with other parties, the current wages paid by respondent for the same position or some other possible measure.
This problem of adequate compensation benefits has not been entirely ignored by the Legislature. When the Workers' Compensation Act was last basically revised in 1966, the Legislature increased the benefits for total disability from the then maximum of $45 a week to a maximum weekly benefit to be fixed by the Commissioner of Labor and Industry. This amendment provided that the maximum benefit rate shall be fixed each year, computed and determined "upon two-thirds of the average weekly wages earned by all employees covered by the Unemployment Compensation Law" (N.J.S.A. 43:21-1 et seq.) as found by the Commissioner of Labor and Industry. N.J.S.A. 34:15-12(a) et seq. This maximum benefit figure is revised annually and has increased from $80 a week in 1967 to $146 a week is 1978. 9 N.J.R. 439 (1977). The minimum benefit was set at $15 weekly and has remained unchanged. Significantly, this 1966 revision, effective March 1, 1967, made no change in the weekly compensation rate for accidents or occupational diseases incurred before March 1, 1967 (then a maximum of $45 a week for total disablity) or to escalate future payments for persons disabled in 1967 or prior thereto based upon inflation or other factors.
Thus, a worker totally disabled in 1946 would be paid today a maximum rate of $25 a week, despite intervening inflation or changes in the statutory scheme since that date.
*196 While this problem has been partially addressed by the Legislature, the various revisions in benefits have been in the adjustment of the maximum percentage of wages to be paid as benefits. There has been no change in the statutory definition of wages to which the increased rate is applied.
Obviously, an alteration in the wage base as well as the rates of compensation for prior exposure to deleterious substances giving rise to occupational disease or earlier accidents reflects a balancing of a number of considerations on the part of the Legislature, including the cost of the increases; the manner in which they are to be borne by the insured, as well as self-insured employers; and the basis upon which the increases are to be calculated, among others.
If ongoing payments and compensation for occupational exposure resulting in disability after the lapse of many years are to be adjusted to meet inflation or other equitable factors, such revisions must take into account many considerations which are clearly matters for the legislative judgment rather than judicial mandate. As the act now stands, it contemplates the contract of hire between the employee and the employer who is charged with payment of workers' compensation benefits as the foundation for all future compensation payments. Here no contract of hire existed after February 1924, which was the last date upon which the decedent incurred the exposure which resulted in his death in 1975 from a compensable occupational disease. The present statutory scheme mandates a rate, in this case, at the minimum of $15 a week.
Affirmed.
KOLE, J.A.D. (concurring).
I concur in the result reached by the majority opinion. But I deem it appropriate to express other considerations which might be marshalled in favor of a contrary conclusion, but which I have rejected. In my view a contrary result would require us to enter the legislative sphere.
*197 The Supreme Court in Panzino v. Continental Can Co., 71 N.J. 298 (1976), construed the 1974 amendment as retroactive in nature because of its beneficent purpose and the general rule of liberally interpreting the Workers' Compensation Act. It also held that such retroactivity did not impair any vested or contract right of the employer in violation of the Due Process Clause of the Fourteenth Amendment. In so holding it said that the claim did not "spring from contract; it is a right born of statute * * * [The] Legislature has simply enlarged the availability of this statutory right to compensation for occupational disease by removing the five-year limitation period. * * * Because [the] * * * claim is so evidently grounded in the statute, it cannot be characterized as deriving from the contract of employment * * * `until an injury, the parties are bound by even radical and substantive changes in the act made after the entry into the employment contract * * *'" 71 N.J. at 305, emphasis supplied.
I do not believe that we are able to disregard the court's characterization of the 1974 amendment as "simply" or no more than an enlargement of the statutory right to compensation for occupational disease by elimination of the limitation period for asserting claims therefor. I note that a change in the benefits provisions of the act does not necessarily result in a change in time limitation provisions thereof. Olyear v. Swift & Co., 51 N.J. 470 (1968).
But even if we could put aside the Supreme Court's characterization of the 1974 amendment, and concentrate on the beneficent purpose of the amendment and the statute, together with the fact that the claimant's rights stem from the statute rather than from a contract of employment, we would be required to reconstruct, out of whole cloth, a theoretical wage basis with Johns-Manville Products Corporation for this employee, without any statutory underpinning therefor. This we cannot do. If there is an oversight by the Legislature in this respect, it must be corrected by that body.
*198 There is no doubt that the only employer who may be held responsible for workers' compensation for this occupational disease is Johns-Manville and that the wages to be considered in determining the amount of compensation are those earned with it. Tomarchio v. Greenwich Tp., 75 N.J. 62, 379 A.2d 848 (1977); Maver v. Dwelling Managers Co., 34 N.J. 440, 444-446 (1961). Moreover, where there is some reasonable basis upon which the statutorily prescribed wage base with the responsible employer may be reconstructed or given a just interpretation, even though the Legislature has failed to provide precisely for the case involved, the courts have not hesitated to fill the gap. Triano v. Carbon Steel Products, 63 N.J. 226 (1973); Maver v. Dwelling Managers Co., supra, 34 N.J. at 442-444. See and compare Conklin v. East Orange, 73 N.J. 198 (1977); Leoni v. Hamilton Tp., 134 N.J. Super. 231 (App. Div. 1975).
Arguably, the majority opinion may be said to place too much emphasis on the definition of "wages" in N.J.S.A. 34:15-37 and the provisions in N.J.S.A. 34:15-32 and 34:15-35 to the general effect that occupational disease claims, including the amount payable and the duration thereof, shall be treated in the same manner as those for injury or death by accident. For N.J.S.A. 34:15-35 contains an exception  that all provisions applicable to claims for injury or death by accident (such as N.J.S.A. 34:15-32 and 34:15-37 and the schedule of benefits, N.J.S.A. 34:15-12 and 34:15-13) shall apply to occupational disease claims, "except to the extent that they are inconsistent with the provisions contained in sections 34:15-30 to 34:15-34" (the occupational disease provisions).
Assume that the 1974 amendment to N.J.S.A. 34:15-34 could be considered as liberalizing not only the time limitations for filing occupational disease claims but also as a legislative endeavor to correct an injustice to those whose wages were unusually low at the time of exposure. This assumption might be viable in view of the remedial goals of the Workers' Compensation Act. These have been said to be *199 (1) to remove from society a burden which it would otherwise have to maintain, and relieve it of the care and support of the public charge; (2) to grant compensation benefits that are essentially a substitute for the financial support that a working man provided for his dependents during his lifetime in the case of dependency claims, and (3) in both lifetime and dependency cases, to provide a wage calculation that would result in a fair approximation of the employee's probable future earning capacity  i.e., under N.J.S.A. 34:15-37  to arrive at a realistic estimate of the worker's true weekly earning potential so that the benefits calculable thereon may fairly relate to the worker's loss attributable to the accident or death, subject to the statutory percentage limitations. The basic point is to provide workers and their dependents with maximum possible protection. Parkinson v. J & S Tool Co., 64 N.J. 159, 166-167 (1974); Triano v. Carbon Steel Products, supra, 63 N.J. at 229, 232, 235.
Under the foregoing assumption the 1974 amendment might be deemed inconsistent with N.J.S.A. 34:15-32 and 34:15-37, and the definition of "wages" in the latter provision might be interpreted, as "the money rate at which the service rendered is recompensed under the contract of hiring at the time of" the discovery of the nature of the disability and its relation to the employment. In short, the "time of the accident" in N.J.S.A. 34:15-37 would be construed as meaning the time of discovery of the disability causally related to the employment  here, the date of death. Since the claimant's right is grounded in the statute, rather than in the contract of employment, this may not be an unreasonable interpretation of N.J.S.A. 34:15-37.
But unlike the situation in cases such as Triano, supra, and the authorities there cited, here there is no statutory provision to lend guidance to the court or the judge of compensation in determining what that "money rate" for the service rendered to Johns-Manville should be. Is it what a comparable employee received in 1975 when this employee *200 died? There is no legislative basis for reconstructing that wage. This kind of statutory omission cannot properly be supplied by the court, nor may it be supplied by the judge of compensation by exercising his expertise predicated on proofs presented to him. And this, notwithstanding the liberal approach to the issue of the wage to be used set forth in Triano, supra. Under these circumstances, I am constrained to agree that that task is solely within the authority and responsibility of the Legislature.
I note that in occupational disease cases, other courts, in order to afford maximum compensation, apparently have used the wages received, or the rate payable, at the time it was discovered that the disease existed or was work-related, even though at that time the worker was no longer employed where he had been exposed to the hazard. See Van Voorhis v. Workmen's Comp. App. Bd., 37 Cal. App.3d 81, 112 Cal. Rptr. 208 (D. Ct. App. 1974); Dickow v. Workmen's Comp. App. Bd., 34 Cal. App.3d 762, 109 Cal. Rptr. 317 (D. Ct. App. 1973); Argonaut Mining Co. v. Industrial Acc. Comm'n, 104 Cal. App.2d 27, 230 P.2d 637 (D. Ct. App. 1951); Michna v. Collins Co., 116 Conn. 193, 164 A. 502 (Sup. Ct. Err. 1933); Rousu v. Collins Co., 114 Conn. 24, 157 A. 264 (Sup. Ct. Err. 1931). It is difficult to determine whether the conclusions reached in these cases are based on an equitable construction of the statute involved or statutory provisions that differ from those in New Jersey.
I also note that in Michigan the term "time of injury," for some compensation purposes with respect to an occupational disease, is specifically defined by statute as the date on which the employee was subjected to the conditions resulting in disease or death. There the court was constrained to follow that statutory provision, even though it deemed the result to be inequitable, on the ground that the matter was strictly legislative in nature. Joslin v. Campbell, Wyant & Cannon Foundry Co., 359 Mich. 420, 102 N.W.2d 584 (Sup. Ct. 1960).
*201 In any event, New Jersey has the unique rule, as indicated in Tomarchio v. Greenwich Tp., 75 N.J. 62, pursuant to which N.J.S.A. 34:15-37, which defines "wages", reflects an intent to limit the wage base to the employer in whose employ the injury or occupational disease occurred. That rule, in my view, bars our following the rationale of those out-of-state cases which appear to arrive at a more just and equitable result in occupational disease matters.[1]
NOTES
[1] As stated in Tomarchio, the Legislature is engaged in a comprehensive revision of the Workers' Compensation Act. It may be desirable for that body to address itself to the issue posed in this case.