**Bertha Rochelle FURROWH, Appellant Below, Appellant,**

v.

**ABACUS CORPORATION, Appellee Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 21, 1989.
Decided: April 24, 1989.

Richard A. Zappa, and Jan R. Jurden, (argued), Young, Conaway, Stargatt & Taylor, Wilmington, for appellant.

Timothy A. Casey, and Beth E. Evans, (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., WALSH, and HOLLAND, JJ.

CHRISTIE, Chief Justice:

This is an appeal from a decision of the Superior Court which affirmed the findings of fact and conclusions of law of the Industrial Accident Board (the "Board"). The appellant, Bertha Rochelle Furrowh, sustained an on-the-job injury while she was employed as a part-time security guard by the appellee, Abacus Corporation ("Abacus"). A hearing was held before the Board to determine the appropriate compensation rate for Furrowh. Abacus contended that the correct way to calculate Furrowh's weekly wages for compensation was to multiply her hourly rate of pay by the hours of an "average work-week" arrived at by averaging the weekly hours of all of its security employees, both part time

---

22. *See* Bd. Prof. Resp. R. 8, *supra*, n. 20; *Matter*    of *Sullivan,* 530 A.2d at 1119.

and full time. The Board adopted this method of calculating Abacus's average workweek and based Furrowh's compensation on the resulting figure. The Board's decision was affirmed by the Superior Court. Because this Court finds that the use of part-time employees' working hours in calculating the workweek on which compensation is based is contrary to the policy behind 19 *Del.C.* § 2302(b) and is inconsistent with the import of our holding in the case of *Howell v. Supermarkets Gen. Corp.*, Del.Supr., 340 A.2d 833 (1975), it reverses the Superior Court.

The evidence presented to the Board showed that Furrowh started working for Abacus in Delaware as a security guard in February, 1982. When Furrowh applied for a security job she asked for a full-time position. Since all the full-time positions were filled, Furrowh accepted work at a part-time position. She was injured in a work related accident on June 15, 1982.

At the time Furrowh worked for Abacus she had a commitment with the United States Army Reserve, which required her to serve one weekend a month and two weeks in the summer. Furrowh testified that this commitment did not prevent her from working full time. She stated that until she accepted her job at Abacus she was employed by another company on a nearly full-time basis, working for that employer an average of between 32 and 40 hours per week.

At the hearing, Lee Nichol testified for Abacus. He stated that he was the Director of Safety and Loss Control for Abacus, and that at the time of Furrowh's accident he had been Director of Security. Nichol stated that about 20 percent of the security guards employed by Abacus worked full time, while the remaining 80 percent worked part time.

Nichol also introduced into evidence before the Board his calculation of the average workweek of all Abacus's employees who had a Delaware security guard permit. To arrive at his average workweek, Nichol took the total hours *every* Abacus security guard employed in Delaware, both part time and full time, had worked in the 10 weeks preceding Furrowh's injury and then divided this total by the number of weeks worked and the number of employees.

Employing this system, Nichol calculated that the average workweek of a security guard working for Abacus in Delaware was only 23.46 hours per week. Prior to her accident Furrowh had been working for Abacus an average 28.26 hours per week. The average workweek of a full-time security guard working for Abacus was 40 hours per week.

In its opinion, the Board, citing the case of *Howell v. Supermarkets Gen. Corp.*, *supra*, noted that unless exceptional circumstances are present, an employee who had been available for full-time work before the accident should receive compensation based upon the employer's average workweek. However, the Board accepted Abacus's contention that 23.46 hours per week represented its average workweek at the time Furrowh was injured and awarded her compensation based on that figure. The Superior Court affirmed the Board's ruling.

The question before this Court is the meaning of "average work week" as that phrase is used to calculate the "weekly wages" of an employee entitled to compensation pursuant to 19 *Del.C.* § 2302(b).[1] This Court has previously noted that the language in question in § 2302(b) is somewhat ambiguous. *Howell v. Supermarkets Gen. Corp.*, 340 A.2d at 836. In two

---

1. 19 *Del.C.* § 2302(b) provides:

    (b) If the rate of wages is fixed by the day or hour, his weekly wages shall be taken to be that rate times the number of days or hours in an average work week of his employer at the time of the injury. If the rate of wages is fixed by the output of the employee, then his weekly wage shall be taken to be his average weekly earnings for so much of the preceding 6 months as he has worked for the same employer. If, because of exceptional causes, such method of computation does not ascertain fairly the earnings of an employee, then the weekly wage shall be based on the average earnings for 6 months of an average employee of the same or most similar employment.

cases, however, this Court found that 19 *Del.C.* § 2302(b) should be read as requiring that a part-time employee who was capable of working full time should be compensated based on his loss of earning capacity (rather than on his mere loss of part-time earnings). *Howell v. Supermarkets Gen. Corp.*, 340 A.2d at 836; *Fitzgerald v. Roy's Flying "A"*, Del.Supr., No. 86, 1970 (*per curiam*) (Nov. 9, 1970) (ORDER) [see Appendix], *aff'g*, Del.Super., 266 A.2d 193 (1970).

In the case of *Howell v. Supermarkets Gen. Corp.*, this Court stated that 19 *Del. C.* § 2302(b):

> nowhere provides for compensation benefits limited or geared to part-time earnings. The policy of § 2302 is that earnings be translated into a "weekly wage".... The controlling factor is the legislative intent to compensate the employee for his loss of earning capacity—not loss of wages earned.

340 A.2d at 836. The court in *Fitzgerald v. Roy's Flying "A"*, Del.Super., 266 A.2d 193, *aff'd*, Del.Supr., No. 86, 1970 (*per curiam*) (Nov. 9, 1970) (ORDER), likewise noted that "[t]he object of the [workmen's compensation act] is to compensate for the inroad upon the full-time earning capacity of the victim of industrial mishap ... and of course a part-time job may be the setting of the destruction of an earning unit capable of full-time work...." *Id.* at 195 n. 1 (quoting *Maver v. Dwelling Managers Co.*, Supr., 34 N.J. 440, 170 A.2d 35, 36 (1961)). The *Fitzgerald* court also stated that "the 'weekly wage' is not the sum paid to an individual during a week when the period of actual work was less than the 'average work week' of the employer." *Id.* at 194. *Accord Frank M. Sheesley Co. v. W.C.A.B. (Brant)*, 106 Pa.Cmwlth. 227, 526 A.2d 450, 452 (1987). Implicit in the ruling that an injured worker must be compensated for his lost *earning capacity*, is the notion that a worker with the capacity to work full time must be compensated for loss of that capacity. *See* 2 Larson *Workmen's Compensation Law* § 60.21(e), at 10–670–71 (1987).

Any method of calculating an employer's average workweek which includes part-time workers will not result in full compensation of an employee for his lost earning capacity—the goal of 19 *Del.C.* § 2302(b). *See Howell v. Supermarkets Gen. Corp.*, 340 A.2d at 836. In this case, for instance, although Furrowh was capable of working full time at Abacus, because no full-time position was available she was only working part time at the time of the accident, and she averaged only 28.26 hours per week. Thus, she worked, and earned, considerably less than her capability, that of a full-time, 40–hour per week security guard. Yet under the employer's system of computing its average workweek, Furrowh would be compensated for her loss based on an average workweek of 23.46 hours, even fewer hours than she was actually working as a part-time employee at the time of the accident. It is illogical to contend that this rate compensates Furrowh for her lost earning capacity when it does not even adequately compensate her for the hours of employment she actually lost. It is evident that if the employer's method of calculating its average workweek were used, the employee would not be fairly compensated for her lost *earning capacity*.[2] The employer's method of calculating its average workweek also contravenes the basic principle that "[s]ince the entire objective [of workmen's compensation] is to arrive at as fair an estimate as possible of claimant's future earning capacity, a claimant who has made only part-time earnings should have his wage basis figured on part-time wages only if the employment itself or his relation to it is inherently a part-time one and likely to remain so; otherwise his

---

**2.** Under the employer's method of calculating its average workweek if one of its full-time, 40–hour per week employees were injured he would be compensated at a rate of only 23.46 hours per week. Thus, this method of calculating its average workweek bears no relation to what an employee actually earns or is capable of earning, and it would produce an unjust effect which cannot be reconciled with the intent of 19 *Del.C.* § 2302(b).

earnings should be converted to a *full-time basis.*" 2 Larson *Workmen's Compensation Law* § 60.00, at 10–590 (1987) (emphasis added).

■ The appropriate way to determine the "weekly wages" of a worker, in light of the policy which informs § 2302(b), is to recompense any employee *capable of working full time* based on the rate the employer pays a full-time worker. Thus, under the circumstances here present, an employer may not include part-time workers in its calculation of "an average workweek" and "weekly wages" must be deemed to indicate a calculation based on full-time employment.

There was no contention that any "exceptional circumstances" were present in this case. *Compare Stanton Lighting Corp. v. Bernstein*, Del.Super., 316 A.2d 560, 561–62 (1973). Therefore, Furrowh's compensation must be based on the average weekly wages of full-time security guards.

This case is remanded to the Superior Court with instructions that it remand this case to the Board for further proceedings in conformity with this opinion.

## APPENDIX

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

ROY'S FLYING "A", Employer
Below, Appellant,

vs.

JOHN FITZGERALD, Employee
Below, Appellee.

No. 86, 1970

(November 9, 1970)

WOLCOTT, Chief Justice; CAREY and HERRMANN, JJ., sitting.

Upon appeal from Superior Court. Affirmed.

B. Wilson Redfearn and Stephen P. Casarino of Tybout, Redfearn & Schnee, Wilmington, for employer below, appellant.

Howard M. Berg and William J. Taylor, III, of Berg and Taylor, Wilmington, for employee below, appellee.

*PER CURIAM:*

In this workmen's compensation case, the main issue is the proper construction of 19 *Del.C.* § 2302(b) in its application to a part-time employee.

The facts and the issue are capably set forth and discussed in the Opinion of the Superior Court reported at 266 A.2d 193. We concur in the conclusions set forth therein, both as to the main issue and the collateral question regarding counsel fees.

Again, a workmen's compensation case seems too old to permit it going without comment as to the slowness with which it has moved through our system. The petition here under review was filed with the Industrial Accident Board in June 1968. As we have so often pointed out recently, public policy requires priority treatment of workmen's compensation cases by all concerned. E.g. *General Motors Corporation v. Cox*, Del.Supr. (decided October 28, 1970).

Affirmed.