# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CLAUDIA DAVALOS, an individual,   )
                                 )
      Claimant-Appellant,      )
                                 )
      v.                      )  C.A. No.: N19A-10-006 CEB
                                 )
ALLAN INDUSTRIES INC.,     )
                                 )
      Employer-Appellee.      )

## ORDER

Submitted: December 15, 2020
Decided: March 31, 2021

*Upon Consideration of Claimant's Appeal of the Decision of the
Industrial Accident Board,* **AFFIRMED.**

Cynthia H. Pruitt, Esquire, DOROSHOW, PASQUALE, KRAWITZ & BHAYA,
Wilmington, Delaware. Attorney for Claimant-Appellant.

Andrew Lukashunas, Esquire, TYBOUT REDFEARN & PELL, Wilmington,
Delaware. Attorney for Employer-Appellee, Allan Industries, Inc.

**BUTLER, R.J.**

## INTRODUCTION

On February 22, 2018, Claudia Davalos ("Claimant") injured her lumbar spine in a work accident while working for Allen Industries Inc. ("Employer"). Employer acknowledged that Claimant sustained a work-related injury and has paid workers' compensation benefits, including medical expenses and total disability.

Approximately one year later, Employer filed a petition to terminate benefits with the Industrial Accident Board (" the IAB"), alleging Claimant was no longer totally disabled because Claimant's work injury had resolved. Claimant argued that her work injuries were ongoing and that she continues to remain totally disabled.

In July, 2019, the IAB conducted a hearing to consider the Employer's petition. In September, 2019, the IAB ruled that Claimant's lumbar spine work injury had resolved by January, 2019 and she reached maximum medical improvement, granting Employer's termination petition.

In October, 2019, Claimant filed with this Court an appeal of the IAB ruling. Claimant urges that the IAB erred because its conclusions were not supported by substantial evidence and was an abuse of discretion.

## FACTS

### A. *The Accident*

Claimant was employed as a housekeeper for Employer at the time of her work accident. On February 22, 2018, Claimant lifted a bag of trash out of a can to

throw into a dumpster when she felt pain and pressure in her mid to low back. Claimant continued to work until the pain became severe while mopping the floor, and then she went home. The following day, Claimant went to the emergency room and, according to the CT report, had several disc bulges but no acute fractures or dramatic malalignment of the lumbar spine. She was given an injection for pain and was discharged. In June, 2018, Claimant was examined by Dr. Jonathan Kates, at the Employer's request.

## B. *Dr. Kates' First Evaluation*

In her initial June, 2018 examination with Employer's expert, Dr. Kates, Claimant indicated she had back pain, describing it as pain in the middle of her back and pressure and cramping sensations in her low back. Additionally, she stated she had occasional 1) pain radiating to her lower right extremity and 2) numbness in her right leg. Claimant reported the pain was worse when standing or sitting too long and disturbed her sleep but could be reduced by lying on her stomach and applying ice.

Dr. Kates observed that Claimant walked with a left sided limp, moving slowly and deliberately. Claimant did not use a walker. Dr. Kates' other observations included 1) she was able to stand on her leg and had normal spine alignment, 2) she had tenderness in the lumbar spine, 3) her lumbar range was limited due to pain, 4) she had pain with resistance, affecting her strength, 5) she had

intact reflexes, 6) she had decreased sensation in the right foot and lower leg, and 7) straight leg raising in sitting and supine positions resulted in low pain without leg pain. Based upon these observations and Claimant's prior medical records, Dr. Kates opined that Claimant sustained a lumbosacral sprain and strain in the work accident.

Dr. Kates also believed that Claimant had signs of symptom exaggeration, with her complaints out of proportion to her physical examination finding. According to Dr. Kates, Claimant 1) had a limp on the left side, inconsistent with her lumbar spine injury, 2) she was able to stand on her toes and heels, indicating normal strength in lower extremities from below the knee (even though Claimant indicated pain and did not test as normal strength when Dr. Kates evaluated those areas), and 3) she had an extremely limited range of motion of her lumbar spine, which was out of proportion to her work injury because the nerve roots in the lumbar spine are not circumferential.[1] Dr. Kates noted that if all of Claimant's nerve roots were injured, she would experience numbness above her knee, which she did not.

Dr. Kates recommended physical therapy and later, a transition to a work conditioning program. Dr. Kates believed that at the time, Claimant could work but with restrictions. Dr. Kates recommended restrictions including 1) limiting the

---

[1] Nerve roots that are not circumferential are, in layman's terms, nerve roots that do not sit on the outside edge of the spine. *Circumferential*, Cambridge Advanced Learner's Dictionary (4th ed. 2013).

3

amount of time she could stand and walk, 2) limiting the amount she could lift, 3) limiting her ability to push and pull, and 4) never bending or climbing and to squat or kneel occasionally.

## C. *Dr. Eskander's Evaluation*

Claimant's expert witness was Dr. Eskander. Dr. Eskander began treating Claimant on April 3, 2018. On Claimant's first visit, she complained of back pain radiating to the right leg and right-middle of the back. She indicated she had never had prior back pain or treatments. She informed Dr. Eskander that she previously saw Dr. Ginsberg, who recommended physical therapy and was considering injections.

Dr. Eskander's examination revealed a normal neurologic exam and normal strength, sensation and reflexes. At this point, Dr. Eskander diagnosed Claimant with a lumbar radiculopathy. Dr. Eskander ordered other doctors to perform ultrasound evaluations and injections in the affected areas. Dr. Eskander's office later performed more injections into the lumbar spine and joints around the pelvis and hip, without significant breakthroughs.

Dr. Eskander's final diagnosis was that Claimant has soft tissue and structural injuries. He believed that the most likely scenario was that she had a degenerative condition of her lumbar spine that was made symptomatic by the work accident. Dr.

4

Eskander stated that although there is typically a strain or sprain component in injuries like Claimant's, a strain or sprain was not the main issue.

On the question of whether Claimant can return to work, Dr. Eskander stated that he did not believe Claimant was functional enough to return to work. He indicated that her disability score was 62 percent – not full disability, as she was able to perform some tasks, albeit with pain. Because the goal was to return her to work and keep her functional, Dr. Eskander believed that putting her back to work would be counterproductive.

**D.** *Dr. Kates' Second Evaluation*

Dr. Kates examined Claimant a second time on January 7, 2019 with the assistance of an interpreter. During the examination, Claimant expressed pain in any position she was in, whether standing, sitting, walking, or lying down. She had a limp on the left side. When sitting in a chair, Claimant had to shift from one side to the other. Claimant needed assistance going from laying horizontally to sitting. She had tenderness and very little active range of motion in her lumbar spine.

Based upon his physical examination and Claimant's records, Dr. Kates again concluded she had a lumbosacral sprain and aggravation of her degenerative disc condition. But for Dr. Kates, there was no objective evidence of ongoing injury.

In Dr. Kate's opinion, Claimant is capable of returning to work full-time in a full duty capacity. Dr. Kates stated that Claimant's condition did not improve

5

between his initial Defense Medical Examination ("DME") in June, 2018 and this one in June, 2019. He reiterated that Claimant's symptoms were out of proportion to the DME's objective findings. He opined that Claimant reached maximum medical improvement by January 7, 2019 and there was no further treatment necessary.

### E. *The IAB Ruling*

The IAB found Dr. Kates' testimony to be the more persuasive of the two competing expert opinions. Specifically, the IAB found that Dr. Kates' testimony was more credible and Claimant did not meet the criteria to establish she is a *prima facie* displaced worker. The IAB ultimately concluded Claimant's lumbar spine work injury resolved by January 7, 2019 and she had reached maximum medical improvement. The IAB found Claimant was able to work in her usual capacity without restrictions since January 7, 2019 and granted Employer's termination petition.

## STANDARD OF REVIEW

The Court has jurisdiction over appeals from administrative agencies, including appeals from the IAB.[2] On appeal, the Court's review of the IAB's decision is limited to determining whether the IAB's findings and conclusions are

---

[2] 29 *Del. C.* § 10142(a).

supported by substantial evidence and free from legal error.[3]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  The Court reviews the IAB's legal determinations *de novo*.[5]  Absent errors of law, Delaware Courts use the abuse of discretion standard for appellate review of the IAB's decision.[6]  The Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[7]  The Court must give deference to the experience and specialized competence of the Board.[8]

## ANALYSIS

As is the case with many hearings before the IAB, the question before it came down to a battle of conflicting expert opinions.  The IAB decided to credit the Employer's expert.  Claimant now argues that the IAB erred as a matter of law because there is substantial evidence in the record to determine the IAB had abused its discretion when determining Claimant's work injury had resolved, as the IAB did not resolve contradictions related to Dr. Kates' testimony.

[3] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965); *see also Glandon v. Land Prep Inc.*, 918 A.2d 1098, 1100 (Del. 2007).
[4] *Roos Foods v. Guardado*, 2016 WL 6958703, at *3 (Del. Nov. 29, 2016); *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).
[5] *Guardado*, 2016 WL 6958703, at *3; *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).
[6] *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del. 1986).
[7] *ILC of Dover, Inc. v. Kelley*, 1999 WL 1427805 (Del. Super. Nov. 22, 1999) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).
[8] *Del. Transit Corp. v. Hamilton,* 2001 WL 1448239 (Del. Super. Oct. 31, 2001) (citing *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993)).

The Board is free to choose between conflicting medical expert opinions. Crediting one may constitute "substantial evidence" upon which to rest a decision.[9] On appeal from the IAB, the Superior Court does not sit as trier of fact with authority to weigh the evidence, determine questions of reliability, and make its own factual findings and conclusions.[10] Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court overturn the Board's decision.[11]

Claimant argues that by stating her injury had reached Maximum Medical Improvement ("MMI") and was resolved, Dr. Kates' testimony was contradictory and inconsistent. Specifically citing the differing definitions of "MMI" and "resolved," Claimant further argues that an injury can be one or the other, but not both, as the IAB's decision suggests. Claimant's argument, however, fails to recognize that the IAB is free to choose between conflicting medical expert opinions. In its determination, the IAB stated that Dr. Kates' testimony was more credible than Dr. Eskander's testimony — it did not indicate that Dr. Kates' testimony was perfectly consistent. It is well-established in Delaware that the IAB may choose between conflicting testimony.[12] This choice is not contingent upon consistent use

---

[9] *DiSabatino Bros., Inc. v. Wortman*, 453 A.2d 102, 106 (Del. 1982).

[10] *Johnson*, 213 A.2d at 67.

[11] *Id.*

[12] *See Noel-Liszkiewicz v. La-Z-Boy, Inc.*, 2012 WL 4762114, at *4 (Del. Super. Oct. 3, 2012) ("In a battle of experts, the Board is ordinarily free to favor one's expert testimony."); *Glanden*, 918 A.2d at 1103 ("It is well settled that IAB is free to choose between conflicting medical testimony, and that the expert testimony which is relied

of Workers' Compensation terms. Therefore, the Court finds that the IAB's acceptance of Dr. Kates' testimony, even with the slight definition inconsistency, constitutes substantial evidence to sustain its finding.

Claimant also misinterprets the requisite showing: to satisfy the burden required to terminate benefits, there must be a showing that Claimant was not fully incapacitated for purposes of working, not that Claimant's injury was resolved.[13] Here, the IAB's decision to accept the testimony of Dr. Kates and conclude that Employer satisfied its initial burden was supported by substantial evidence. As to Claimant's physical capabilities, Dr. Kates and Dr. Eskander agreed on the lack of objective findings to explain Claimant's perception of pain. Dr. Kates indicated that Claimant's subjective complaints were exaggerated and out of proportion to her physical examination. She had normal neurologic and reflex examinations, yet

---

upon will constitute substantial evidence for purposes of appeal."); *Romine v. Conectiv Communications, Inc.*, 2003 WL 21001030, at \*4 (Del. Super. Apr. 22, 2003) ("It is well established that when parties provide testimony from expert witnesses, the Board is free to choose between conflicting medical opinions . . . ."); *DiSabatino Bros. Inc.*, 453 A.2d at 106 ("As we view the case, the evidence was definitely in conflict and, the substantial evidence requirement being satisfied either way, the Board was free to accept the testimony of Dr. Vates, the employer's expert neurologist, over contrary opinion testimony.").

[13] *See Torres v. Allen Family Foods*, 672 A.2d 26, 30 (Del. 1995) ("After filing a petition to terminate an employee's total disability benefits, a former employer bears the initial burden of demonstrating that the employee is no longer totally incapacitated for the purpose of working." (citing *Governor Bacon Health Center v. Noll*, 315 A.2d 601, 603 (Del. 1974))); *See also Howell v. Supermarkets Gen. Corp.*, 340 A.2d 833, 835 (Del. 1975) (citing *Chrysler Corp. v. Duff*, 314 A.2d 915, 918 n. 1 (Del. 1973)).

9

expressed pain in any position she was in.  She had a limp on her left side that was not present when she saw her treating physicians.  She expressed pain in her lower lumbar spine when Dr. Kates pressed her upper spine.  Dr. Kates also indicated Claimant's pain distribution was not consistent with a spinal nerve problem.  Based on Dr. Kates' testimony, there is ample proof in support of the IAB's factual finding that Claimant was no longer incapacitated.

Therefore, Claimant's appeal is **DENIED.**

## CONCLUSION

For the foregoing reasons, the IAB's decision granting Employer's Petition to Terminate Benefits is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge