CECILIA BEYER, PETITIONER-APPELLANT, v. PORTER–HAY-DEN, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1985—Decided June 12, 1985.

Before Judges MATTHEWS and HAVEY.

*Robert A. Negran* argued the cause for appellant (*Levinson, Conover, Axelrod, Wheaton & Grayzel,* attorneys).

*Lawrence G. Moncher,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

PER CURIAM.

Plaintiff appeals the judgment of dismissal denying her claim for a special adjustment benefit pursuant to *N.J.S.A.* 34:15–95.4 in this Workers' Compensation dependency case.

Decedent-employee died in March 1982 from lung and pleural diseases directly related to his occupational exposure to asbestos. Decedent was unable to work, as a result of his illness, since 1972. In October 1976, decedent was awarded 100% total disability, 35% of which was due to a preexisting medical

condition, and 65% of which was attributed to his employment with respondent, Porter-Hayden. Until early 1978, respondent's two insurance carriers directly paid decedent his weekly compensation of $50 (based on his last earned wage of $75 per week), and at that time and until his death, the payments were assumed by the Second Injury Fund as provided in *N.J.S.A.* 34:15–94 and 95.

In May and June of 1972, plaintiff filed three dependency claim petitions against Porter-Hayden, its insurance carriers, and against the Second Injury Fund to seek dependency benefits for herself and a minor daughter, and to establish her statutory right to receive a special adjustment benefit pursuant to *N.J.S.A.* 34:15–95.4.

Despite the agreement of respondent's carriers to be responsible for any dependency benefit, including a Special Adjustment due plaintiff, as well as an early determination that the Second Injury Fund should be dismissed as a respondent, lengthy litigation, spanning nearly two years, ensued while the Deputy Attorney General, appearing on behalf of the Commissioner of Labor and Industry, explored the possible statutory parameters of the special adjustment provision.

On March 1, 1984, the court found that since decedent had died in 1982, plaintiff's benefits were not "at a rate applicable prior to 1980," although they were indeed based on the wages earned by her husband in 1972. The court awarded plaintiff dependency benefits of $58 per week, the minimum 1982 rate, to be apportioned between the two carriers.

During discussions at the pretrial conference, it was learned from the Deputy Attorney General that decedent's offset for $402.50 monthly in Social Security benefits precluded him from receiving a special adjustment benefit during his lifetime. The Attorney General on behalf of the Commissioner of Labor took the position that the widow could not be entitled to a special adjustment benefit in addition to her basic dependency benefit because the decedent had not actually received a special adjust-

ment benefit for himself. Plaintiff does not receive Social Security benefits. Her dependent daughter Susan is paid approximately $369 by Social Security which will continue until the end of her minority in June 1985.

Briefs were requested from the plaintiff and the Attorney General on the issue of whether the widow's entitlement to special adjustment benefits is derivative of the decedent-husband's receipt of such benefits.

In the period following, the Commissioner reversed his position and agreed that the widow's right to special adjustment benefits is not derivative of the husband's receipt of those benefits while alive.

On June 13, 1983, a hearing was held before the Supervising Judge of Compensation, at which time plaintiff testified on the issues of dependency and funeral expenses. All parties conceded that decedent's death was causally related to his compensable occupational disease. The Second Injury Fund was dismissed as a respondent, and counsel for the two respondent insurance carriers stipulated their agreement to be proportionally liable (Hartford, 61.5% and I.N.A. 38.5%) for any dependency benefits which the court determined were due plaintiff. They also agreed to pay any special adjustment to which she was found entitled. Entry of a dependency judgment was postponed pending receipt of the Division's calculations of the amount of the special adjustment to which the plaintiff was entitled.

Thereafter, the Attorney General again challenged the plaintiff's right to receive a special adjustment. This time it was alleged that the plaintiff's dependency benefits would not be paid at a rate "applicable prior to January 1, 1980" so as to render her eligible for the increment. He argued that the date of death which would be determinative of the proper rate to be paid, occurred subsequent to January 1, 1980. The Attorney General also contended that Social Security benefits payable to the minor daughter should reduce not only the daughter's

portion of the adjustment benefit, but also the widow's share of the benefit.

On March 1, 1984 the Judge of Compensation awarded plaintiff the statutory funeral allowance and dependency benefits of $58 per week, the minimum rate in effect at the date of death in 1982. The court held that, since decedent died in 1982, plaintiff's benefits were not "at a rate applicable prior to 1980" as required by *N.J.S.A.* 34:15–95.4. The court awarded plaintiff the 1982 minimum rate and rejected the claim for a special adjustment benefit over the argument that hers was a pre–1980 rate since it was based on pre–1980 wages.

Plaintiff instituted this action against her husband's employer, Porter-Hayden, and its insurance carriers, to establish her right to a special adjustment benefit payment as provided under *N.J.S.A.* 34:15–95.4 which was enacted by the Legislature in 1980. The provision for a special adjustment benefit was intended to help employees and or their dependents, whose workers' compensation payments were fixed at less than 1980 maximum compensation rates, keep pace with the rising cost of living brought about by the last decade's spiraling inflation, through an incremental adjustment of their scheduled payments to match the percentage relationship of comparable compensation awards set in 1980, minus a set-off for any social security or black-lung benefits or employer paid portion of pension plans. *N.J.S.A.* 34:15–95.4.

The Attorney General claims the right to appear on behalf of the Commissioner of Labor and Industry as custodian of the special adjustment benefits Fund. By statute and under the present New Jersey Court Rules, there is no provision for such intervention. In fact, the special adjustment benefits statute specifically provides that while the Commissioner makes payments from the fund to persons currently receiving disability payments under *N.J.S.A.* 34:15–95, those persons entitled to compensation under *N.J.S.A.* 34:15–12(b), or persons entitled to receive dependency benefits pursuant to *N.J.S.A.* 34:15–13 (as

in the case of plaintiff here), are paid their new adjustment increment directly by the responsible insurance carrier or self-insured employer. It is apparent that in these latter two instances, neither the Commissioner nor the Special Adjustment Benefits Fund is directly involved in either the assessment or administration of pay-outs due dependents such as plaintiff, so as to implicate intervention by the Attorney General.

We do not, however, decide the issue, deeming its resolution unnecessary in view of our ultimate decision.

There have been no definitive interpretations of *N.J.S.A.* 34:15–95.4 concerning a widow's right to special adjustment benefits since its enactment effective August 21, 1980.

■ The purpose of the special adjustment benefit of *N.J. S.A.* 34:15–95.4 is designed to provide an equitable system of updating obsolete workers' compensation rates being paid to the totally disabled and the dependents of workers who died due to work-connected injuries which were eroded due to the inflation spiral. Such a widow is Mrs. Beyer.

In view of the clear legislative intent to bring outmoded compensation rates into line with economic reality, it is inconceivable that a widow would be denied special adjustment benefits merely because her husband died after January 1, 1980. Such a result runs counter to the very purpose of the act.

Charles Beyer's wages at the time he last worked on June 18, 1972 were found to be $75 per week. Since *N.J.S.A.* 34:15–13 computes dependency compensation for one dependent at 50% of wages and 55% of wages for two dependents, plaintiff is entitled to basic dependency benefits of $37.50 after her daughter reaches majority, and $41.25 while her daughter is a minor.

The State argues that, since decedent died after January 1, 1980, the dependents are not receiving benefits at a rate applicable prior to January 1, 1980 and thus are not entitled to special adjustment benefits. It contends that the dependents'

rates became fixed on the date of death (March 26, 1982) and thus are not "rate(s) applicable prior to January 1, 1980" as required by *N.J.S.A.* 34:15–95.4, ¶ 1.

Such an interpretation in our judgment is sheer sophistry and eviscerates the legislative scheme of updating obsolete workers compensation rates being paid to dependents; it also does not comport with the actual manner in which dependency payments are computed.

■ First, Section 13, computes dependency compensation on the basis of 50% of decedent's wages for one dependent. This percentage "rate" has been in effect since 1966 when it was increased from 35%. *L.*1966, *c.* 126, § 2. We note that this fact in itself is sufficient to bring plaintiff's rate within the requirement of receiving dependency benefits "at a rate applicable prior to January 1, 1980."

■ Second, a dependency "rate" consists of two factors: (1) a percentage factor, and (2) a wage factor. The current (post–1980) percentage factor is still 50%, the same rate applicable prior to 1980. The wage factor is based on decedent's last earnings. In the present case, decedent's $75 weekly wages was last earned in June 1972. It was at that time that plaintiff's dependency "rate" became fixed. It is of no moment whether decedent died in 1978, 1979, 1980, or 1982. At any of those times, plaintiff's basic dependency rate would be 50% of the 1972 earnings of $75 per week. The fact of decedent's survival for a brief time after January 1, 1980 does not alter the fact that plaintiff is receiving benefits "at a rate applicable prior to January 1, 1980" because those benefits are based on her husband's pre–1980 wages.

In *Bush v. Johns Manville Products Corp.*, 154 *N.J.Super.* 188 (App.Div.1977), we held that in both occupational disease and accident cases, the benefit rate to be applied is to the wages at which the service rendered was recompensed under the contract of hiring in force at the time of accident, or, as in *Bush*, a case also involving work exposure to asbestos, to the last wages paid to the employee while in the respondent's

employ. Acknowledging the disparity between such sometimes ancient wages and current costs of living for dependents, both the majority and concurring opinions in *Bush* recognized the potential income inadequacies posed by so setting the applicable benefit rate on wages last earned in a respondent's employ. However, they felt statutorily constrained to do so, and strongly urged legislative review of the Compensation Act.

*N.J.S.A.* 34:15–95.4, enacted in 1980 and relied upon by plaintiff, was intended to provide much-needed economic relief to dependents such as the widow in *Bush*, and the plaintiff here. Under the new statute, the correct benefit rate to be applied in computing dependency death awards in occupational exposure cases continues to be based on the last wages earned during the offending employment, but a statutory right to a special adjustment benefit was created especially for dependents like plaintiff whose benefit rate, based on last earned wages, was set before 1980.

At the time of death, decedent was still receiving benefits based on his 1972 wage. Since his death occurred subsequent to the effective date of *N.J.S.A.* 34:15–95.4, establishing a new statutory right to a special adjustment benefit for dependents of deceased employees, and would act to increase the compensation rate applicable in the instant dependency claim, there is no barrier to plaintiff's eligibility for this special adjustment benefit.

If the Legislature intended the special adjustment to apply only in cases of dependents receiving benefits as a result of a pre–1980 compensable death, it simply would have spoken of "increasing" the benefits and would have gone no further. Since the Legislature also provided for the "setting" of dependency benefits, as a matter of first instance, to include the weekly adjustment, the conclusion is inescapable that Section 95.4 applies as well to those whose decedents die (and whose rates are then "set") after January 1, 1980.

Moreover, paragraph two of Section 95.4 provides that dependents "of a person totally disabled who *dies* while receiving

compensation from the fund provided for by *N.J.S.A.* 34:15–94 and 34:15–95, shall *become entitled* to dependent benefits under this chapter ... on or after the effective date of this ... act." (emphasis added). The effective date of the act is August 21, 1980. The language of this section clearly evinces an intent to apply the act prospectively to cases of deaths occurring after January 1, 1980. Since the act became effective *after* January 2, 1980, the Legislature would have used the past tense "died," had it meant to restrict special adjustments only to those dependents whose decedent died before January 1, 1980.

Finally, removing dependents whose decedent died after January 1, 1980 from the class of dependents eligible for special adjustments is repugnant to the very purpose of Section 95.4. That purpose is to update obsolete payments which were eroded due to inflation, *see Ries v. Harry Kane, Inc.*, 195 *N.J.Super.* 185 (App.Div.1983), by bringing them into line with the 1980 compensation rates. The plaintiff is in the same economic position as a widow whose husband died December 31, 1979 while earning $75 per week. It is incongruous and nullifies the beneficent purpose of the act, to grant adjustments to the other widow while denying plaintiff protection against the effects of inflation simply because she was fortunate enough to have her husband survive after January 1, 1980.

██ Because of the trial court's decision that plaintiff was not entitled to special adjustment benefits, he found it unnecessary to determine whether the daughter's Social Security benefits would act as an offset solely to her own dependency benefit, or to both the mother's and daughter's dependency benefits.

It is elementary that "statutory offsets are to be confined to the exact recipients specified; thus an offset applicable by statute to an employee will not reduce benefits to his widow, and an offset applicable to a widow will not reduce benefits to dependent children." 4 Larson, *Workman's Compensation Law*, 18–39 to 40, § 97.41 (ed. 1982), citing *City & County of*

*San Francisco v. Workmen's Compensation Appeals Board,* 269 *Cal.App.*2d 382, 74 *Cal.Rptr.* 810 (Ct.App.1969); *see also Eckert v. N.J. State Highway Department,* 1 *N.J.* 474 (1949). Thus an offset applicable to a dependent child will not reduce benefits to a widow.

The offset language in *N.J.S.A.* 34:15–95.4, ¶ 5, provides that "(t)he special adjustment benefits payment provided herein shall be reduced by an amount equal to the *individual's benefit* payable under the Federal Old Age Survivors and Disability Insurance Act (OASDI) . . ." (emphasis added). This case involves the dependent minor daughter and the dependent widow. Each is entitled to special adjustment benefits based upon her respective share of the entire dependency benefits. The only individual receiving OASDI benefits is the daughter. Therefore, only the special adjustment payment to her can be offset by her OASDI benefits. Plaintiff is not an individual receiving OASDI benefits; therefore, the special adjustment attributable to her cannot be offset by OASDI benefits paid to a different individual. *Accord, Redland v. Nelson's Quality Eggs, Inc.,* 291 *N.W.*2d 371 (Minn.1980).

We reverse the judgment of the Division of Workers' Compensation and remand for the entry of a judgment consistent with the holding of this opinion.