CECILIA BEYER, RESPONDENT, v.
PORTER–HAYDEN, RESPONDENT.

IN THE MATTER OF THE APPLICATION OF CECILIA BEYER TO
SECURE BENEFITS FROM THE SPECIAL COMPENSATION
FUND PURSUANT TO N.J.S.A. 34:15–95.4.

Argued May 12, 1986—Decided October 6, 1986.

*Lawrence G. Moncher,* Deputy Attorney General, argued the cause for appellant Commissioner of Labor as Trustee of the Second Injury Fund (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Robert A. Negran* argued the cause for respondent Cecelia Beyer (*Levinson, Conover, Axelrod, Wheaton & Grazel,* attorneys).

*Sheldon Schiffman* submitted a letter in lieu of brief on behalf of respondent Porter-Hayden (*Fred S. Brause, Jr.,* attorney).

PER CURIAM.

In this case we are called upon to interpret *N.J.S.A.* 34:15–95.4 (the Act), which provides for a "special adjustment benefit" (SAB) to supplement the basic workers' compensation benefits received by certain employees or dependents whose basic benefits were set "at a rate applicable prior to January 1, 1980." The Judge of Compensation ruled that the survivor of a worker who was injured in 1972, but died in 1982, was not entitled to a SAB. The Appellate Division reversed in a well-reasoned opinion. 212 *N.J.Super.* 539 (1985).

The Appellate Division calculated respondent's basic benefit under *N.J.S.A.* 34:15–13(a), which grants death benefits equal to 50% of decedent's last-earned wage. The wage factor is based on decedent's 1972 wage of $75.00 per week, and the percentage factor has been unchanged since 1966. Respondent is thus entitled to a basic death benefit of $37.50 per week— 50% of $75.00. Because both the wage and percentage factors antedate 1980, the Appellate Division reasoned, this benefit is computed on the basis of "a rate applicable prior to January 1, 1980," and consequently entitles respondent to a SAB.

We affirm the judgment of the Appellate Division for substantially the reasons expressed in its opinion.[1] We write only to address an issue raised for the first time before this Court.

Appellant, the Commissioner of Labor and Industry (Commissioner), focuses on the application of L.1979, c. 283 (the 1979 Amendments), which effected a thorough revision of the schedules for workers' compensation payments. Among other changes, the 1979 Amendments raised the minimum compensation payment guaranteed under N.J.S.A. 34:15–12(a) and –13(j) from $15.00 per week to 20% of the statewide average weekly wage (SAWW). The Commissioner contends that because respondent's basic compensation payment under N.J.S.A. 34:15–13(a) is less than the statutory minimum, respondent is entitled to 20% of the 1982 SAWW. Because this minimum is computed on the basis of the 1982 statewide wage, it is not "a rate applicable prior to 1980." Accordingly, the Commissioner concludes that respondent is not entitled to a SAB under N.J.S.A. 34:15–95.4.[2]

Unfortunately, neither party to this litigation recognized the effect of section 19 of L.1979, c. 283.[3] This section made the amended compensation rates applicable only to injuries occurring after January 1, 1980. Sections 18–20, reported as a note under N.J.S.A. 34:15–7, state in pertinent part:

---

[1]The facts and legislative background of this controversy are set forth in the opinion below. 212 N.J.Super. at 540–43.

[2]The Commissioner's interest in this matter derives from the fact that special adjustment benefits are ultimately paid from the Second Injury Fund, created under N.J.S.A. 34:15–94. This fund is maintained by assessments against self-insurers and companies writing employer liability insurance. N.J.S.A. 34:15–94. Under certain circumstances a self-insurer or insurance carrier must pay a SAB directly to the recipient. However, these payments are credited against the insurer's annual N.J.S.A. 34:15–94 assessment. Consequently, even if an insurer assumes liability for SAB payments, the revenues of the Second Injury Fund will be diminished.

[3]Although the dissenting opinion advocates reargument with respect to the impact of this section of the 1979 Amendments, the Court has already brought this issue to the attention of the parties and solicited their comment.

> The provisions of this amendatory and supplementary act shall apply to accidents and occupational disease exposures which occur on or after January 1, 1980 and shall not be applied retroactively to accidents or occupational diseases occurring prior to January 1, 1980 except to cases where claim is made for an occupational disease characterized by latent manifestation as set forth in R.S. 34:15–34.

It is clear from this section that the amended minimum compensation rate of 20% of the SAWW is not applicable to this case. Respondent's decedent was injured in 1972 and the amendatory act applies only to injuries occurring on or after January 1, 1980.[4] The minimum compensation rate applicable to respondent's claim is the rate in effect prior to the 1979 Amendments —$15.00 per week. Because the $15.00 minimum is "a rate applicable prior to 1980," respondent would be entitled to a SAB even if her basic rate calculated under section 13(a) were less than the minimum weekly benefit.

The special adjustment benefit provided by *N.J.S.A.* 34:15–95.4 raises a pre–1980 compensation payment to a level that bears the same relationship to the 1980 maximum workers' compensation rate as the compensation payment bore to the maximum compensation rate in effect at the time of award. *N.J.S.A.* 34:15–105 provides for an annual supplement to the special adjustment benefit that increases an individual's total compensation payments to maintain the relationship with the current year's maximum compensation rate. Read together, the purpose of these two provisions is to adjust the workers' compensation benefits of certain employees and dependents so as to minimize the impact of inflation.

It should be noted that the legislative scheme allows a worker injured prior to 1980 to receive continual adjustments

---

[4]Section 19 contains an express exception to the rule of nonretroactivity when claims are made for occupational diseases characterized by latent manifestation. While Mr. Beyer's disease, asbestosis, is a latent disease as defined under *N.J.S.A.* 34:15–34, the exception is not applicable to this case because both his exposure to asbestos and the manifestation of the disease occurred prior to 1980. Section 19 "is not construable as excepting from the rule of nonretroactivity those occupational disease exposures resulting in symptomatology patently manifested prior to January 1, 1980, and on the basis of which claim petitions were filed prior to that date." *Rybski v. Johns-Manville Prods. Corp.*, 185 *N.J.Super.* 433, 437 (App.Div.1982).

for inflation, whereas a worker injured after January 1, 1980 and compensated under the revised schedules effected by *L.* 1979, *c.* 283 will not receive such automatic annual adjustment. Any apparent inequity is mitigated by the fact that the 1979 Amendments significantly increased the compensation available to workers suffering serious injury after its effective date.[5] Further, it is conceivable that the legislative interpretation we offer here could result in reduced compensation in a small number of cases.[6] This result will be rare, and is unavoidably mandated by the law as enacted. Whatever disparities exist are intrinsic to the legislative scheme and consequently are for the Legislature, and not for this Court, to remedy.

Accordingly, the judgment of the Appellate Division is affirmed.

O'HERN, J., dissenting.

I dissent from the majority's disposition of this case. An outline of the syllogistic dilemma presented to the courts below runs like this:

(1) In 1979 the Legislature adopted the Workers' Compensation Reform Act, *L.* 1979, *c.* 283, that generally increased rates and benefits for injured workers. The Act increased the minimum benefit for all survivors of workers who suffered occupationally induced deaths from $15 a week to 20% of the statewide average weekly wage and increased the maximum benefit from 66⅔% to 75% of the statewide average weekly

---

[5]The Senate Labor, Industry and Professions Committee Statement to the 1979 Amendments noted that the bill

would make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment.

[6]For example, the dependent of a deceased worker injured prior to 1980 and otherwise eligible for a SAB may receive no adjustment, or a reduced adjustment, if he or she receives offsetting social security or Black Lung benefits. *N.J.S.A.* 34:15–95.4. This recipient might conceivably be more generously compensated if the legislative scheme entitled him or her to the minimum basic benefit of 20% of the SAWW afforded by the 1979 Amendments, because the statutory offset for compensation from other sources in cases involving post-1979 injuries applies only to benefits to be paid to injured workers, not their surviving dependents. *N.J.S.A.* 34:15–95.5.

wage. The Act, however, did not change the basic rate of compensation for those survivors.

(2) Then in 1980 the Legislature adopted a Special Adjustment Benefit plan (SAB) (*L.*1980, *c.* 83) to increase awards for workers and their survivors who had been receiving benefits under totally outdated and inadequate benefit and rate schedules in effect prior to the 1979 Reform Act.

(3) The question concerning the relation between these two amendments, then, is whether a survivor of a post-1979 occupational death that was caused by a pre-1980 injury is:

(a) eligible to receive the Special Adjustment Benefit because the basic wage and benefit rate, calculated at the time of injury, was in effect prior to the 1979 Reform Act, or,

(b) ineligible because the 1979 Reform Act provides an adequate *minimum* benefit that creates a safety net against the economic obsolescence of the survivor's benefits and consequently makes the SAB plan inapplicable?

The Appellate Division construed the Special Adjustment Benefit law to conclude that since the basic rate remained the same, an SAB benefit should be paid even though post–1979 survivors have some minimum protection under the 1979 Reform Act. 212 *N.J.Super.* 545–546 (1985).

The majority resolves the issue by reading the 1979 Reform Act as totally inapplicable to survivors of pre–1980 accidents and thus wipes out the dilemma. In doing so, I fear that it may be affecting the rights of litigants not before the Court on the basis of an interpretation that was neither briefed nor argued prior to oral argument before us. Even the claimant would appear to disagree with the majority's view that section 19 of *L.* 1979, *c.* 283 limits benefits paid to survivors of workers who incurred a pre–1980 injury but died after January 1, 1980 to the schedule of benefits in existence at the time of the injury.[1]

---

[1]In her brief in opposition to rehearing in the Appellate Division, claimant stated her position thus:

Additionally, the dependency "rate" consists of two factors: (1) a percentage factor, and (2) a wage factor. The current (post–1980) percentage factor is still 50%, the same rate applicable prior to 1980. The wage factor

I would understand the majority's disposition if it were based on the theory that only a limited class of claimants might be expected to fall within the class of post–1979 survivors not receiving Social Security or other survivor's benefits, that alternate benefits would guarantee a decent minimum of subsistence, and that there would be minimal economic burden upon the SAB fund. But without more information, such a result is purely conjectural.

We have attempted to determine the economic consequences of either interpretation of the Act pressed by the parties. The ramifications are complex and the relationship to statutory purpose is not easily discernible. Either interpretation results in anomalies. For example, if we accept the Commissioner's theory, we must ask ourselves, would the Legislature have intended that the survivors of victims injured in a 1972 industrial accident receive differing benefits depending upon whether the worker died before or after January 1, 1980? On the other hand, the Attorney General has argued that claimant's interpretation will create the anomalous result of lesser benefits for workers with greater wages. *Attorney General's Supreme Court Reply Brief and Second Supplemental Appendix* at 5–6.

I believe it is unwise for us, however, to resolve at this time the rights of an unknown class of post–1979 survivors whose benefits will be adversely and perhaps severely impacted by the majority's rationale. Unless I misread the majority's opinion, all post–1979 survivors of pre–1980 accidents not receiving an SAB must have their benefits limited to 66⅔% of the average weekly wage payable at the date of the worker's injury rather than 75% of the average. In addition, those not eligible for a

---

is based on decedent's last earnings. The plaintiff[']s basic dependency "rate" then would be 50% of his 1972 earnings of $75 per week, subject to certain *minimums and maximums in effect on the date of his death.* [*Petitioner-Appellant's Brief Relative To Respondent-Respondent's Petition For Rehearing or Clarification* at 3 (emphasis added).]
Her position has not changed.

SAB will not be eligible to receive the 20% minimum and might be limited to $15 per week.

Although these may be consequences intended by the Legislature, they are not ones I would decide without fuller briefing and participation by parties whose interests might be adversely affected. We may be doing substantial harm to an unknown and unascertained class whose interests are not represented before us.

I would invite reargument on the question of the effect of section 19 with claimants' interests fully represented.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN —6.

*For reversal* —Justice O'HERN—1.