573 A.2d 963

FRED JENKINS, PETITIONER–RESPONDENT, v. JOHNS–MAN-
VILLE PRODUCTS CORP., RESPONDENT–RESPONDENT, v.
COMMISSIONER OF LABOR, AS TRUSTEE OF THE SECOND
INJURY FUND, RESPONDENT–APPELLANT.

ELIZABETH BOGNAR, PETITIONER–RESPONDENT, v. JOHNS–
MANVILLE SALES CORP., RESPONDENT–RESPONDENT, v.
COMMISSIONER OF LABOR, AS TRUSTEE OF THE SECOND
INJURY FUND, RESPONDENT–APPELLANT.

BARBARA SHIMANOWITZ, PETITIONER–RESPONDENT–CROSS-
APPELLANT, v. JOHNS–MANVILLE SALES CORP., RESPON-
DENT–RESPONDENT, v. COMMISSIONER OF LABOR, AS
TRUSTEE OF THE SECOND INJURY FUND, RESPONDENT-
APPELLANT.

CHRISTINE JACKSON, PETITIONER–RESPONDENT, v. JOHNS–
MANVILLE PRODUCTS CORP., RESPONDENT–RESPON-
DENT, v. COMMISSIONER OF LABOR, AS TRUSTEE OF THE
SECOND INJURY FUND, RESPONDENT–APPELLANT.

ELEANOR KACSMAR, PETITIONER–RESPONDENT–CROSS–AP-
PELLANT, v. JOHNS–MANSVILLE PRODUCTS CORP., RE-
SPONDENT–APPELLANT, v. COMMISSIONER OF LABOR, AS
TRUSTEE OF THE SECOND INJURY FUND, RESPONDENT-
CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 21, 1990—Decided April 27, 1990.

Before Judges MICHELS, COHEN and BROCHIN.

*Lawrence G. Moncher,* Deputy Attorney General, argued the cause for respondent-appellant Commissioner Of Labor, and respondent-cross-appellant in A–5659–86T7 (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Lawrence G. Moncher,* on the brief).

*Richard H. Thiele* argued the cause for respondent-respondent Johns–Manville Sales Corp. and/or Johns–Manville Prod-

ucts Corp., and respondent-appellant in A–5659–86T7 (*Thiele & Hermes*, attorneys; *Richard H. Thiele*, on the brief).

*Raymond E. Wenstrom* argued the cause for petitioner-respondent Fred Jenkins (*Raymond E. Wenstrom*, attorneys; *Larry M. Radomski*, on the brief).

*Robert N. Golden* argued the cause for petitioner-respondent Elizabeth Bognar (*Robert N. Golden*, attorney; *Robert N. Golden*, on the brief).

*Murray D. Weingartner* argued the cause for petitioner-respondent-cross-appellant Barbara Shimanowitz (*Wysoker, Glassner, Weingartner & Goldblatt*, attorneys; *Allan L. Lockspeiser*, on the brief).

*Robert N. Golden* argued the cause for petitioner-respondent Christine Jackson (*Robert N. Golden*, attorney; *Robert N. Golden*, on the brief).

*Irving Silverman* argued the cause for petitioner-respondent-cross-appellant Eleanor Kacsmar (*Reitman, Parsonnet, Maisel & Duggan*, attorneys; *John J. Sharkey, Jr.*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

By this opinion, we decide appeals from five decisions of a judge of compensation interpreting provisions of the Workers' Compensation statutes. Although not consolidated, all five were argued before us on the same day. We have considered them together because they all involve questions about eligibility for "special adjustment benefit payment[s]" pursuant to *N.J.S.A.* 34:15–95.4 and the correct procedure for the calculation of those benefits.[1]

---

[1] When these cases were decided by the Division of Workers' Compensation, *N.J.S.A.* 34:15–95.4 read in part as follows:

*Beyer v. Porter–Hayden*, 104 *N.J.* 104, 515 *A.*2d 790 (1986), describes the purpose and operation of *N.J.S.A.* 34:15–95.4 as follows:

> The special adjustment benefit provided by *N.J.S.A.* 34:15–95.4 raises a pre–1980 compensation payment to a level that bears the same relationship to the 1980 maximum workers' compensation rate as the compensation payment bore to the maximum compensation rate in effect at the time of award. *N.J.S.A.* 34:15–105 [now part of *N.J.S.A.* 34:15–95.4] provides for an annual supplement to the special adjustment benefit that increases an individual's total compensation payments to maintain the relationship with the current year's maximum compensation rate. Read together, the purpose of these two provisions is to adjust the workers' compensation benefits of certain employees and dependents so as to minimize the impact of inflation.

The statement attached to *Assembly Bill 1206* (1980) which became *N.J.S.A.* 34:15–95.4 states its purpose as follows:

> This bill would provide a special adjustment benefit payment for the totally disabled victims of earlier industrial accidents whose level of compensation has fallen woefully below current needs. For example, a worker injured 20 years ago might now be receiving a disability benefit of $30.00 or $40.00 per week as compared with the current standard of $185.00, yet, the needs of both may be the same. The program will be integrated with public or private income

> Any employee or dependent receiving further weekly benefits as provided under *R.S.* 34:15–95, *R.S.* 34:15–12(b) or *R.S.* 34:15–13 at a rate applicable prior to January 1, 1980, and whose payment is less than the maximum compensation rate in effect for the year 1980 shall be entitled to receive a special adjustment benefit payment from the fund provided for by *R.S.* 34:15–94 and *R.S.* 34:15–95. . . .
>
> . . . .
>
> The amount of the special adjustment benefit payment shall be such that when added to the worker's compensation rate awarded pursuant to *R.S.* 34:15–95, *R.S.* 34:15–12(b), *R.S.* 34:15–13, or this section as a result of injury or death, the total shall bear the same percentage relationship to the 1980 maximum workers' compensation rate that the worker's own compensation rate awarded as a result of the injury or death bears to the then effective maximum workers' compensation rate.

*L.*1986, *c.* 82, § 2 added a provision dealing with a supplement to the special adjustment benefit payment. In all material respects, the conditions of eligibility for this supplement and the procedures for calculating it are the same as those for the special adjustment benefit payment. Therefore our discussion does not refer expressly to the supplement, but what we have to say about the special adjustment benefit payment is also applicable to the supplement.

security or disability benefit programs to provide a floor for totally disabled New Jersey industrial accident victims.

The Assembly Labor Committee's statement added that the legislation

... would adjust benefits upward for the eligible surviving dependents of workers' compensation recipients as well.

(This legislative history is quoted in *Wehrle v. American Can Co.*, 224 *N.J.Super.* 400, 403–404, 540 *A.*2d 898 (App.Div.), certif. granted and case remanded, 111 *N.J.* 642, 546 *A.*2d 553 (1988)). *See also Beyer v. Porter–Hayden, supra.*

The petitioners in our five cases are Jenkins, Bognar, Jackson, Kacsmar, and Shimanowitz. Jenkins worked for Johns–Manville Products Corp. from 1947 to 1955, and, in 1977, was totally and permanently disabled by asbestosis resulting from his employment. Bognar contracted mesothelioma as the result of his work for Johns–Manville Sales Corp. from 1942 to 1954. The disease first manifested itself in 1985, and he became totally disabled on August 18, 1985. The disease was a contributing cause of his death on June 10, 1986. Jackson contracted asbestosis and other conditions as the result of his work for Johns–Manville Products Corp. from 1947 to 1976. The disease first manifested itself in 1978, and he became totally disabled September 29, 1978. These conditions were contributing causes of his death on January 13, 1983. Kacsmar contracted asbestosis, mesothelioma and other conditions as the result of his work for Johns–Manville Products Corp. from 1942 to 1945. The disease first manifested itself in 1981, and he became totally disabled May 29, 1981. These conditions were contributing causes of his death on December 7, 1983. Shimanowitz contracted mesothelioma as the result of his work for Johns–Manville Sales Corp. from 1941 to August 15, 1972. (He continued to work for the company in Colorado until September 1981, but he was not exposed to asbestos after August 15, 1972.) The disease was a contributing cause of his death on July 17, 1982.

In each of these cases, the judge of compensation ruled that the worker or his surviving dependents, or both,

were entitled to special adjustment benefits, but only after first having received basic workers' compensation benefits for 450 weeks. In each of the cases, the Commissioner of Labor has appealed from that ruling, and in *Kacsmar* and *Shimanowitz*, the petitioners have taken the same position by cross-appeals. In *Jackson*, the Commissioner of Labor filed the only notice of appeal, and the 450 week waiting period is the only issue raised. In *Bognar, Kacsmar* and *Shimanowitz*, the Commissioner has appealed from the allowance of any special adjustment benefit payment, and in all the cases, he disputes both the method used to calculate the payment and the resulting amount.[2]

–1–

Eligibility

By the terms of *N.J.S.A.* 34:15–95.4, a claimant is eligible for special adjustment benefit payments if he or she is "receiving ... weekly benefits" for permanent total disability or death "at a rate applicable prior to January 1, 1980." "Rate" refers to

---

[2]In their briefs, the parties have referred to the following issues which we have declined to consider:

The Commissioner contends that the determination of a claimant's eligibility for special adjustment benefit payments and calculation of the amounts of those payments are matters which were validly excluded from the jurisdiction of the judges of compensation. Because this issue was not referred to in the Commissioner's notices of appeal and was not raised before the judge of compensation or fully briefed and argued before us, we will not decide it.

In *Jackson*, Johns–Manville Sales Corp. asserts that the proper funeral benefit was payable according to the legislation in effect in 1976, the last date of exposure, rather than in 1983, the date of death. Johns–Manville Sales Corp. filed no notice of cross-appeal in that case.

In *Shimanowitz*, the Commissioner seeks to set aside a stipulation of facts which was the basis of a settlement between the petitioner and the respondent. His purpose is to establish that the occupational disease from which the employee died manifested itself in 1981, the last date when he was employed by Johns–Manville at its Colorado facility, where, however, he was not exposed to asbestos. Because of the view which we take as to the choice of the applicable compensation rate schedule, the date of manifestation is not material in *Shimanowitz* because only a dependency claim is at issue.

the amount of workers' compensation benefits payable each week. The formula for the calculation of that amount is defined by *N.J.S.A.* 35:15–12(b) and *N.J.S.A.* 35:15–13. Those sections fix the applicable workers' compensation benefit rate as a stated percentage of the employee's weekly wage, but not less than a stated minimum nor more than a stated maximum.

In *Beyer v. Porter–Hayden*, 212 *N.J.Super.* 539, 515 *A.*2d 1223 (App.Div.1985), aff'd 104 *N.J.* 104, 515 *A.*2d 790 (1986), the Appellate Division held that when the wage earned by an employee prior to January 1, 1980, or a statutory percentage in effect prior to January 1, 1980, or both, are factors used to determine the amount of the workers' compensation benefit payable to a totally and permanently disabled employee, or to the surviving dependent of a deceased employee, the resulting benefit rate is one "applicable prior to January 1, 1980" within the meaning of *N.J.S.A.* 34:15–95.4. The Supreme Court approved the reasoning of that decision and affirmed it. However, the Court also pointed out that if, pursuant to the minimum benefits provision of *N.J.S.A.* 34:15–12(a) which became effective January 1, 1980, the amount of a claimant's benefit was fixed at 20 percent of the statewide average weekly wage, then neither his actual wage nor the statutory percentage otherwise applicable would be a factor in fixing his "rate." *Beyer, supra,* 104 *N.J.* at 106–107, 515 *A.*2d 790. In that event, the resulting benefit rate would not be one "applicable prior to January 1, 1980" within the meaning of *N.J.S.A.* 34:15–95.4. *Id.*

If an employee is killed or totally and permanently disabled by a compensable accident, the workers' compensation benefits which he or his dependents receive are based on his wages at the time of the accident. *N.J.S.A.* 34:15–37; *Beyer, supra,* 212 *N.J.Super.* at 545, 515 *A.*2d 1223; *Bush v. Johns–Manville Products Corporation,* 154 *N.J.Super.* 188, 193, 381 *A.*2d 65 (App.Div.1977), certif. den. 75 *N.J.* 605, 384 *A.*2d 835 (1978). If an employee is killed or totally and permanently

disabled by an occupational disease, the resulting workers' compensation benefits are based on his wages at a time which has been described both as the time when the worker was last exposed to a condition which materially contributed to the disease and as the time of his last employment by the employer responsible for paying workers' compensation benefits. *N.J. S.A.* 34:15–32; *Beyer, supra,* 212 *N.J.Super.* at 545–546, 515 *A.*2d 1223; *Bush, supra,* 154 *N.J.Super.* at 192–196, 381 *A.*2d 65.

In most instances, both the last exposure and the last employment by the responsible employer will have occurred at the same time. But in *Shimanowitz,* the Commissioner of Labor argues that the wage to be used to calculate the petitioner's dependency benefits is the wage which the employee earned in 1981, while employed by Johns–Manville Sales Corp. in a position which did not expose him to asbestos, the condition which contributed to the occupational disease which caused his death. In accordance with the stipulation between the petitioner and Johns–Manville Sales Corp., the judge of compensation used the wage earned in 1972 when the employee was last exposed to asbestos. We must therefore choose which date is the proper one for determining the applicable wage.

*N.J.S.A.* 34:15–32 states:

> The compensation payable for death or disability total in character and permanent in quality resulting from an occupational disease shall be the same in amount and duration and shall be payable in the same manner and to the same persons as would have been entitled thereto had the death or disability been caused by an accident arising out of and in the course of the employment.

Since the wage used to calculate the compensation rate in the case of an accident is the wage earned at the time of the accident, we must decide whether, in the case of an occupational disease, the date of last exposure or the date of last employment by the employer responsible to pay benefits is more closely analogous to the date of the occurrence of an industrial accident.

We hold that the closer analogy, and therefore the applicable date, is the date of last exposure. We have previously held that the date of manifestation of an occupational disease does not determine the wage to be used for computing the compensation rate in a case in which the employer is not the same when the disease manifests itself as when the employee was last exposed to a condition which contributed to the disease. *Bush v. Johns–Manville Products Corporation, supra.* That in *Shimanowitz* the employer was the same on both dates is pure fortuity, unrelated to any concept of when the "accident" occurred. The final exposure to a condition which, by its cumulative effect, causes an occupational disease is much more closely analogous to an accident than is the manifestation of the disease. Using the date of last exposure to determine the applicable wage has the additional advantage that that rule is susceptible of uniform application in all cases, regardless of whether or not the employer remains the same after exposure has ceased.

*N.J.S.A.* 34:15–12, which fixes an employee's compensation rate for a permanent total disability, was amended by *L.*1979, *c.* 283, § 5. The amendment increased the statutory percentages which are to be multiplied by the employee's wages to determine his compensation rate, and it raised the minimum and maximum benefit rates, setting them at stated percentages of the statewide average weekly wage, rather than at fixed amounts. *L.*1979, *c.* 283, § 6 amended *N.J.S.A.* 34:15–13 by making those increased maximums and minimums applicable to dependency claims. (The percentages used to determine dependency claims were last amended by *L.*1966, *c.* 126, § 2, effective March 1, 1967.)

According to § 19 of *L.*1979, *c.* 283, the amendments enacted by *L.*1979, *c.* 283, §§ 5 and 6 are applicable only to

accidents and occupational disease exposures which occur on or after January 1, 1980 and shall not be applied retroactively to accidents or occupational diseases occurring prior to January 1, 1980. . . .

This provision makes the 1979 amendments inapplicable to a disability caused by an accident which occurred or an occupational disease which manifested itself [3] before January 1, 1980. *Falcon v. American Cyanamid,* 221 *N.J.Super.* 252, 260–265, 534 *A.*2d 403 (App.Div.1987); *Rybski v. Johns–Manville Products Corp.,* 185 *N.J.Super.* 433, 449 *A.*2d 540 (App.Div.1982). However section 19 of *L.*1979, *c.* 282, also contains an exception to its prohibition against retroactive application:

[The amendment] shall not be applied retroactively to accidents or occupational diseases occurring prior to January 1, 1980 *except to cases where claim is made for an occupational disease characterized by latent manifestation as set forth in R.S. 34:15–34.* (Emphasis added.)

This exception implies that the 1979 amendment *is* applicable to a disability resulting from an occupational disease which first manifests itself after January 1, 1980, regardless of when the last exposure which contributed to the disease may have occurred. *Falcon, supra.*

■ Furthermore, in the case of a dependent's claim for dependency benefits, regardless of when the condition first manifests itself, "the benefit rate to be applied in both occupational disease and accident cases is the rate in effect at the time of death, not the rate in effect at the time of exposure or accident." *Bush, supra,* 154 *N.J.Super.* at 194, 381 *A.*2d 65. *See also Gluck v. Peter Freund Knitting Mills,* 42 *N.J.* 60, 198 *A.*2d 768 (1964); *McAllister v. Board of Ed., Kearny,* 79 *N.J.Super.* 249, 191 *A.*2d 212 (App.Div.1963), aff'd 42 *N.J.* 56, 198 *A.*2d 765 (1964).

■ These legal rules mean that a recipient of workers' compensation at a rate less than the maximum compensation rate for 1980 who is either an employee totally and permanently disabled as the result of an occupational disease, or the dependent of such an employee, is entitled to special supplementary

---

[3]For a definition of the "manifestation date" of an occupational disease, see *Falcon v. American Cyanamid,* 221 *N.J.Super.* 252, 259–260, 534 *A.*2d 403 (App.Div.1987).

benefit payments pursuant to *N.J.S.A.* 34:15–95.4 if the date of the employee's last exposure to a condition which materially contributed to his disease was earlier than January 1, 1980, unless:

(1) despite the pre–1980 date of last exposure, the 1979 amendments to *N.J.S.A.* 34:15–12 and *N.J.S.A.* 34:15–13 are applicable to the claim because

(a) either the claim is that of the employee himself for a disability resulting from an occupational disease which first manifested itself after January 1, 1980, or

(b) the claim is that of a surviving dependent of an employee and the employee died after January 1, 1980,

*and*

(2) The employee's pre–1980 wage is not a factor in calculating the applicable workers' compensation rate because, if it were used, the resulting benefit rate would be less than twenty percent of the statewide average weekly wage.

–2–

## Calculation Of Benefits

When the cases which are the subject of this appeal were decided by the judge of compensation, the provision of *N.J.S.A.* 34:15–95.4 which is pertinent to the calculation of the amount of special adjustment benefit payments read in part as follows:

The amount of the special adjustment benefit payment shall be such that when added to the worker's compensation rate awarded pursuant to *R.S.* 34:15–95, *R.S.* 34:15–12(b), *R.S.* 34:15–13, or this section as a result of injury or death, the total shall bear the same percentage relationship to the 1980 maximum workers' compensation rate that the worker's own compensation rate awarded as a result of the injury or death bears to the then effective maximum workers' compensation rate.... The special adjustment benefit payment provided herein shall be reduced by an amount equal to the individual's benefit payable [from various other sources].

■ In the present cases the judge of workers' compensation interpreted this provision to mean that the special adjustment benefit payment was to be such that when it was added to the basic compensation rate, the sum would bear the same percentage relationship to the 1980 maximum rate as the compensation rate awarded as the result of the death or injury bears to the maximum compensation rate which was in effect on the date of the worker's last exposure. The Commissioner of Labor, how-

ever, points out that the "worker's own compensation rate" is the product of his wage at the date of last exposure and the statutory percentage (subject to the maximum and minimum rates) which is applicable as of the date of manifestation for a worker's claim for total and permanent disability resulting from an occupational disease and as of the date of the worker's death for a dependency claim. Therefore, he argues, the special adjustment benefit payment is a quantity such that when it is added to the basic compensation rate, the sum will bear the same percentage relationship to the 1980 maximum rate as the compensation rate awarded as the result of the death or injury bears to the maximum compensation rate which was in effect, not on the date of the worker's last exposure, but on the date of manifestation of his disease or on the date of his death.

We agree with the position taken by the Commissioner. His position is supported both by the language of the relevant portion of *N.J.S.A.* 34:15–95.4 and by the Supreme Court's opinion in *Beyer, supra,* 104 *N.J.* at 107, 515 *A.*2d 790. The statute says:

> The amount of the special adjustment benefit payment shall be such that when added to the worker's compensation rate awarded ... the total shall bear the same percentage relationship to the 1980 maximum compensation rate that the worker's own compensation rate awarded as a result of the injury or death bears to the *then* effective maximum workers' compensation rate. [Emphasis added.]

In our view, "then" refers to the time as of which the "worker's own compensation rate [was] awarded". *Beyer, supra,* says:

The special adjustment benefit provided by *N.J.S.A.* 34:15–95.4 raises a pre–1980 compensation payment to a level that bears the same relationship to the 1980 maximum workers' compensation rate as the compensation payment bore to the *maximum compensation rate in effect at the time of award.* [Emphasis added.]

–3–

### The 450 Week Waiting Period

*N.J.S.A.* 34:15–95.4 prior to its amendment by *L.* 1988, *c.* 26, § 3, effective May 27, 1988, defined an employee or dependent

eligible to receive a special adjustment benefit payment as one who, among other things, was "receiving *further* ... benefits as provided under *R.S.* 34:15–95, *R.S.* 34:15–12(b) or *R.S.* 34:15–13...." (Emphasis added.) The statute does not explain what benefits are "*further* benefits." However, *N.J.S.A.* 34:15–12(b) refers to "*further* weekly payments" which may be available to a totally and permanently disabled worker under some circumstances after expiration of the 450 week period during which he is entitled to receive his basic compensation benefits and *N.J. S.A.* 34:15–13 and *N.J.S.A.* 34:15–95 each refers to 450 weeks as the basic benefit period. From this usage, it is arguable that "*further* benefits" in *N.J.S.A.* 34:15–95.4 refers to benefits payable beyond the initial period of 450 weeks. That is the construction of the phrase adopted by the judge of compensation in these cases now before us on appeal. He therefore held that a totally and permanently disabled worker or a surviving dependent is not entitled to receive a special adjustment benefit until after 450 weeks have elapsed during which he or she has received the basic workers' compensation payments.

The Commissioner of Labor has challenged that ruling. He has informed us that his department has consistently interpreted *N.J.S.A.* 34:15–95.4 to require immediate provision of a special adjustment benefit payment to someone otherwise eligible to receive it, without any waiting period. During oral argument he told us that since the original enactment of *R.S.* 34:15–95.4, special adjustment benefit payments have been awarded to thousands of workers and their dependents without a 450 week waiting period and that the only claimants who have been subjected to that requirement are the claimants in the five cases now before us on appeal.

The rulings of the judge of workers' compensation were incorporated in judgments entered in these cases on May 16, 1988, although announced some time earlier. *N.J.S.A.* 34:15–95.4 was amended by *L.*1988, *c.* 26, § 3, effective May 27, 1988, to delete "further" from the statutory phrase, "further benefits." *L.*1988, *c.* 26, § 4 provides that "This act shall take

effect immediately." The Commissioner told us during oral argument that this amendment was introduced at the initiative of the executive branch of government. The inference is inescapable that "further" was deleted in order to remove the basis for the rationale of the judge's waiting-period rulings in these cases. Consequently, if we were to affirm the judge's rulings on this issue, the claimants involved in the cases now before us would be the only parties ever subjected to a 450 week waiting period.

In our view, we are not required to reach so unfair a result and we are unwilling to do so. In *Gibbons v. Gibbons*, 86 *N.J.* 515, 522, 432 *A.*2d 80 (1981), the Supreme Court admonished us that "[T]he rule favoring prospective application of statutes, while a 'sound rule of statutory interpretation ... is no more than a rule of statutory interpretation' and is not to be applied mechanistically to every case," quoting *Rothman v. Rothman*, 65 *N.J.* 219, 224, 320 *A.*2d 496 (1974). A statute should be applied retroactively if "retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation...." *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80 (In addition to the examples which *Gibbons* cites, *ibid.*, of retroactivity implied from the purpose for which a statute was adopted, *see Harris v. Harris*, 235 *N.J.Super.* 434, 442–443, 563 *A.*2d 64 (Ch.Div.1989), and *Hart v. Fox*, 204 *N.J.Super.* 564, 499 *A.*2d 553 (Law Div.1985)). In our opinion, the timing and circumstances of the adoption of the 1988 amendment to *N.J.S.A.* 34:15–95.4 demonstrate that the Legislature intended it to be applicable to cases pending on appeal after May 27, 1988, and particularly to the cases now before us.

–4–

Disposition Of The Cases On Appeal

Special adjustment benefit payments were erroneously allowed in *Bognar* and *Kacsmar*. In *Bognar* the employee last worked May 3, 1954. But his disability rate was based on the

statutory minimum in effect in 1985 when his disability manifested itself; his dependent's compensation rate was based on the minimum rate in effect on his date of death, June 10, 1986. In *Kacsmar*, the employee last worked in 1955. But his disability compensation rate was based on the statutory minimum in effect in 1981 when his disease manifested itself; his dependent's compensation rate was based on the statutory minimum in effect in 1983 when he died. In neither case was a pre–1980 rate a factor in the calculation of benefits.

In *Jackson, Jenkins,* and *Shimanowitz,* the judge of workers' compensation was correct in awarding special adjustment benefit payments. In each of these cases the wage which the employee last earned in the employment which contributed to his disability or death was earned prior to January 1, 1980, and was a factor in calculating the benefits due. In none of these cases were disability or death benefits properly based on minimum rates which became effective after January 1, 1980. In these cases, the recipients to whom the special adjustment benefit payments were awarded are entitled to receive them from July 1, 1980, or the date of receipt of basic compensation benefits, whichever is later. However, the amounts of their special adjustment benefit payments must be recalculated using the maximum workers' compensation rate as of manifestation or death, whichever is applicable, rather than the maximum rate which was in effect as of the date of last exposure.

The judgment in each of the five cases which are before us on appeal is reversed and the cases are remanded to the Division of Workers' Compensation for proceedings consistent with this opinion.